Sandra Y. SHIRRELL et al.,
Plaintiffs-Appellants,

v.

MISSOURI EDISON COMPANY,
Defendant-Respondent.

No. 59260.

Supreme Court of Missouri,
En Banc.

April 14, 1976.

Robert R. Schwarz, Fordyce & Mayne, Clayton, William B. Quinn and Cynthia S. Holmes, St. Louis, for plaintiffs-appellants.

Robert V. Niedner, Niedner, Moerschel, Nack & Ahlheim, St. Charles, Gerre S. Langton, Evans & Dixon, St. Louis, for defendant-respondent.

FINCH, Presiding Judge.

The trial court, on motion of defendant, dismissed with prejudice a wrongful death action brought by the widow and minor children of a man allegedly killed as a result of defendant's negligence. The action was dismissed for failure to prosecute. Plaintiffs appealed to the Missouri Court of Appeals, St. Louis District, which reversed and remanded for trial, with one judge dissenting. On application of defendant, we ordered the case transferred in accordance with Art. V, § 10, Mo.Const., and pursuant therewith we now consider the case as though here on direct appeal. We affirm.

This suit was filed on October 3, 1969. The petition alleged that Donald E. Shirrell, an employee of a road construction firm, was electrocuted when machinery he was operating came in contact with overhanging power lines of defendant which allegedly were negligently maintained. Answer was filed and the parties thereafter engaged in discovery by means of both interrogatories and depositions, the last of which was filed on December 30, 1970. The record discloses no further activity in the case until it was placed by the court on the inactive calendar on September 30, 1971. The next entry was a request by plaintiffs on May 31, 1972, to have the case removed from the dismissal docket where it evidently had been placed, alleging as an explanation for delay to date the fact that the case had required extensive discovery by plaintiffs, that illness of plaintiffs' attorney had caused some delay and that difficulty had been experienced in obtaining an expert witness. The motion stated that an expert witness had now been obtained and that plaintiffs were ready for trial. It was requested that the case be placed on the trial docket.

Notwithstanding plaintiffs' allegations about being ready and their request that the case be placed on the trial docket, the case was not tried. Approximately one year later, on June 6, 1973, defendant filed a motion to dismiss for failure to prosecute. That motion was presented and argued and on June 29, 1973, was overruled.

The next activity disclosed by record entries was on September 25, 1973, when the court again ordered the case placed on the inactive docket. Finally, on April 12, 1974, defendant filed another motion to dismiss for failure to prosecute. That motion was presented and argued on April 19, 1974, after which the trial court ordered the case dismissed with prejudice at the cost of plaintiffs.

On April 26, 1974, plaintiffs filed a motion to set aside the order of dismissal. A hearing thereon was held at which William B. Quinn, the attorney who had filed and handled this suit on behalf of plaintiffs, testified in support of the motion. In addition to summarizing preparation consisting of interviewing witnesses and submitting interrogatories and taking depositions, he testified as to efforts to obtain photographs of the motor crane which came into contact with the power lines and the concrete finishing machine with which Sherrill was working at the time he was killed and which finishing machine was connected at that time by hooks, cables, pulleys, etc. to the boom of the motor crane. He located the crane within a few days after he commenced his investigation but the concrete finishing machine had been moved elsewhere and thereafter was moved from job to job. It was November or December 1972, he testified, when he was finally able to obtain photographs thereof. In addition, Mr. Quinn testified that he had some trouble locating an expert to testify. Ultimately, he succeeded but then in the spring of 1972, he was informed by his expert that he had terminated his association with St. Louis University as a consulting electrical engineer and had entered the employment of Union Electric, the parent firm of defendant herein. This necessitated locating another expert.

Quinn testified that in December 1973 he suffered a coronary occlusion, together with a left lung embolus, causing him to be in the hospital for a week and thereafter at home under medication and under the doc-

tor's care. He testified that he did not actively return to practice until April 4, 1974. He also testified that he had had a personal problem in that his wife had notified him in December 1973 that she was obtaining a divorce. On cross-examination Mr. Quinn testified that during all of 1972 and 1973 he was actively engaged in the practice of law, handling during that time some "very, very rough and tumble litigation".

Additional evidence on the motion consisted of an affidavit of Dr. Melvin L. Goldman, Mr. Quinn's doctor, which was received without objection as representing what Dr. Goldman would testify to, if present. It recited that Mr. Quinn suffered his coronary insufficiency and left lung embolus on December 16, 1973, that he was hospitalized for one week, that Mr. Quinn thereafter remained under his regular care and observation and that the illness was of such nature and severity as to disable him from performing the duties of his profession from December 16, 1973, through March 25, 1974. Thereafter he was partially restricted in his work activity, but was scheduled to return to full activity on or about May 15, 1974.

On May 10, 1974, the trial court overruled plaintiffs' motion to set aside the judgment of dismissal and this appeal followed.

■ Rule 67.02 authorizes a defendant to move for dismissal of a civil action against him on account of failure on the part of the plaintiff to prosecute said action. In addition, it is well settled that courts have inherent authority, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence. The rule is stated in *Euge v. Lemay Bank & Trust Co.*, 386 S.W.2d 398, 399 (Mo.1965), as follows:

"The general rule is that courts have inherent power, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence, and that the action thereon will not be disturbed on appeal unless such discretion was abused. *City of Jefferson v. Capital City Oil Co.*, Mo.App., 286 S.W.2d 65, 68[2]; *Salle for Use and Benefit of Man-*

*del v. Holland Furnace Co.*, Mo., 337 S.W.2d 87, 90[5]. * * * "

That rule was reaffirmed in *Esslinger v. Roach*, 463 S.W.2d 861 (Mo.1971). See also *City of Jefferson v. Capital City Oil Co.*, 286 S.W.2d 65 (Mo.App.1956); *Guhman v. Grothe*, 346 Mo. 427, 142 S.W.2d 1 (1940); 24 Am.Jur.2d, Dismissal, Discontinuance and Nonsuit, § 59 (1966); 27 C.J.S. Dismissal and Nonsuit § 65(1) (1959).

■ As noted in the quotation from *Euge*, the dismissal for failure to prosecute will not be disturbed on appeal unless the discretion of the trial court has been abused. Thus, the only question presented on this appeal is whether the trial court abused its discretion in dismissing for failure to prosecute. In resolving that question, the standard of review was succinctly stated in *James v. Turilli*, 473 S.W.2d 757, 763 (Mo.App.1971), as follows:

"Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Anderson v. Robertson*, Mo.App., 402 S.W.2d 589[3–4]."

In *Anderson v. Robertson*, the case cited and relied upon in the foregoing quotation from *James v. Turilli*, the court stated the rule thus, 402 S.W.2d at 593:

"Reverting now to the *Harriman* and *Mullins* cases, supra, we say that judicial discretion is abused then a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. It is, however, a principle deep within our law that on appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and that the burden of showing abuse of that discretion is on the appellant. *Stewart v. Small*, 5 Mo. 525, l. c.

528; *Funkhouser v. How*, 18 Mo. 47, l. c. 49; and cases listed in 3 Mo.Dig., Appeal and Error, [key] 901. When appellate courts are called upon to apply this test, it is well to heed the words: 'If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' *Delno v. Market St. Ry. Co.*, C.C.A.Cal., 124 F.2d 965, 967. Bowers, The Judicial Discretion of Trial Courts, §§ 12 and 17, pp. 20 and 33."

■ Applying the foregoing standard, did the trial court abuse its discretion in dismissing the case for failure to prosecute? We conclude that it did not. This case was filed on October 3, 1969, and an answer was filed promptly. Plaintiffs were allowed ample time for discovery by interrogatory and deposition. These were completed by the end of December. Even so, plaintiffs did not try their case and on September 30, 1971 (2 years after the case was filed), the court placed the case on the inactive calendar. Evidently, it thereafter was transferred to a dismissal docket, because on May 31, 1972, plaintiffs sought removal from that docket and asked the court to put the case on the trial docket. The petition to remove from the dismissal docket recited that an expert witness had been obtained and that they were ready for trial. In his testimony in April 1974 on the motion to set aside the dismissal, Mr. Quinn testified that during the spring of 1972, his first expert went to work for Union Electric and became unavailable, but at the end of May 1972, he was telling the trial court that plaintiffs had an expert witness and were ready for trial. They made no complaint at that time about not having a photograph of the concrete finishing machine, although in April 1974, Mr. Quinn advanced as an excuse for delay the fact that a photograph of the concrete finishing machine was not obtained until November or December 1972. In any event there was no showing of any need for time to do anything further after December 1972 except to try the case.

The court took the case off the dismissal docket in 1972, but, despite the protestations of plaintiffs that they were ready for trial and wanted the case placed on the trial docket, plaintiffs still did not try their case. Finally, one year later (June 6, 1973), defendant filed a motion to dismiss for failure to prosecute. The record does not disclose what arguments were advanced by plaintiffs in response to that motion, but in any event, the trial court gave plaintiffs another reprieve and overruled the motion on June 29, 1973; thus giving plaintiffs another chance to try their case.

Still the case was not tried by plaintiffs and on September 25, 1973, the court again ordered the case placed on the inactive docket. This was four years after the case had been filed.

Finally, on April 12, 1974, defendant, for the second time, filed a motion to dismiss. This was presented to the court on April 19, 1974. Mr. Quinn did not appear but sent someone from his office to represent him. No evidence was offered by plaintiffs to explain or justify their delay and the court ordered the case dismissed for failure to prosecute.

This record shows that the trial court was considerate of and lenient with plaintiffs and their counsel. When the case was placed on a dismissal docket 2½ years after the case had been filed, relief was granted after the court was informed by written memorandum filed by plaintiffs that discovery had been completed, that an expert witness had been obtained and that plaintiffs were "now ready for trial in the case". A year passed without trial, but when defendant filed a motion to dismiss for failure to prosecute, the court, although the case was more than 3½ years old, again granted relief by overruling that motion.

During all of this time, Mr. Quinn was actively trying cases. He continued to do so until his heart attack on December 16, 1973. Even so, in spite of the fact that the case was ready for trial and had been for some time, and in spite of the consideration and leniency shown, including rescue on two occasions from threatened dismissal for failure to prosecute, the case still was not tried. Under such circumstances, the trial

court did not abuse its discretion when it dismissed for failure to prosecute in April 1974, 4½ years after it had been filed. *Esslinger v. Roach, supra; Euge v. Lemay Bank & Trust Co., supra.* Its ruling was not "clearly against the logic of the circumstances before the court" nor was it "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration". At the very least, it must be said that "reasonable men could differ as to the propriety of the action taken by the trial court".

Courts must be able to control and move their dockets. It is well known that the volume of cases filed has become such that if courts do not dispose of cases with reasonable dispatch, the backlog will be such that many persons will not be able to have their cases heard within a reasonable time because of unnecessary and sometimes unreasonable and excessive delay in other cases. There are exceptional cases when delay is justified and when a court properly permits it, but there is nothing in this record which cried out for the court to have been more lenient than it was. No abuse of discretion has been shown.

Plaintiffs also complain that the dismissal was with prejudice instead of without prejudice. They say that defendant's motion to dismiss did not request the court to dismiss the case with prejudice and that the court order should not have stated the dismissal was with prejudice. There is no merit in this contention. Under Rule 67.03, this dismissal would have been with prejudice even if the court's order had not specifically so stated. This would have been true unless the order had stated specifically that it was without prejudice. Hence, the court gave defendant nothing more in the way of relief than it would have received by an order merely sustaining the motion as filed.

Judgment affirmed.

SEILER, C. J., and MORGAN, HOLMAN, HENLEY, and DONNELLY, JJ., concur.

BARDGETT, J., dissents.