STATE ex rel. William L. WEBSTER, Attorney General of Missouri, Respondent,

v.

LEHNDORFF GENEVA, INC., a Texas corporation, et al., Appellants.

No. 69432.

Supreme Court of Missouri, En Banc.

Feb. 17, 1988.

James E. Reeves, Caruthersville, for appellants.

William L. Webster, Atty. Gen., Kent Barta and Paul M. Rauschenbach, Asst. Attys. Gen., Jefferson City, for respondent.

HIGGINS, Judge.

Pursuant to Chapter 350, RSMo, Lehndorff Geneva, Inc., a Texas Corporation, and its related business entities were ordered to divest themselves within 2 years of the Missouri farmland they owned. Appellants claim the trial court should have dismissed the case for failure to prosecute and attack the constitutionality of chapter 350. Affirmed.

The State's petition for divestiture, filed November 10, 1977, alleged that on January 6, 1977, Lehndorff, et al., acquired title to approximately 2700 acres of agricultural land in Mississippi County, Missouri, in violation of section 350.015, RSMo 1986.[1] The defendants filed their motion to dismiss on December 16, 1977. The court overruled

1. **350.015. Corporations not to engage in farming—exceptions.**—After September 28, 1975, no corporation not already engaged in farming shall engage in farming; nor shall any corporation, directly or indirectly, acquire, or otherwise obtain an interest, whether legal, beneficial or otherwise, in any title to agricultural land in this state; provided, however, that the restrictions set forth in this section shall not apply to the following:

(1) A bona fide encumbrance taken for purposes of security;

(2) A family farm corporation or an authorized farm corporation as defined in section 350.010;

(3) Agricultural land and land capable of being used for farming owned by a corporation as of September 28, 1985, including the normal expansion of such ownership at a rate not to exceed twenty percent, measured in acres, in any five-year period, or agricultural land and land capable of being used for farming which is leased by a corporation in an amount, measured in acres, not to exceed the acreage under lease to such corporation as of September 28, 1975, and the additional acreage for normal expansion at a rate not to exceed twenty percent in any five-year period, and the additional acreage reasonably necessary, whether to be owned or leased by a corporation, to meet the requirements of pollution control regulations;

(4) A farm operated wholly for research or experimental purposes, including seed research and experimentation and seed stock production for genetic improvements, provided that any commercial sales from such farm shall be incidental to the research or experimental objectives of the corporation;

(5) Agricultural land operated by a corporation for the purposes of growing nursery plants, vegetables, grain or fruit used exclusively for brewing or winemaking or distilling purposes and not for resale, for forest cropland or for the production of poultry, poultry products, fish or mushroom farming, production of registered breeding stock for sale to farmers to improve their breeding herds, for the production of raw materials for pharmaceutical manufacture, chemical processing, food additives and related products, and not for resale;

(6) Agricultural land operated by a corporation for the purposes of alfalfa dehydration exclusively and only as to said lands lying within fifteen miles of a dehydrating plant, and provided further said crops raised thereon shall be used only for further processing and not for resale in its original form;

(7) Any interest, when acquired by an educational, religious, or charitable not for profit or pro forma corporation or association;

(8) Agricultural land or any interest therein acquired by a corporation other than a family farm corporation or authorized farm corporation, as defined in section 350.010, for immediate or potential use in nonfarming purposes. A corporation may hold such agricultural land in such acreage as may be necessary to its nonfarm business operation; provided, however, that pending the development of agricultural land for nonfarm purposes, such land may not be used for farming except under lease to a family farm unit, a family farm corporation or an authorized farm corporation, or except when controlled through ownership, options, leaseholds, or other agreements by a corporation which has entered into an agreement with the United States of America pursuant to the New Community Act of 1968 (Title IV of the Housing and Urban Development Act of 1968, 42 U.S.C. 3901–3914), as amended, or a subsidiary or assign of such a corporation;

(9) Agricultural lands acquired by a corporation by process of law or voluntary conveyance in the collection of debts, or by any procedure for the enforcement of a lien or claim thereon, whether created by mortgage or otherwise; provided, that any corporation may hold for ten years real estate acquired in payment of a debt, by foreclosure or otherwise, and for such longer period as may be provided by law;

(10) The provisions of sections 350.010 to 350.030 shall not apply to the raising of hybrid

that motion December 18, 1979. The defendants filed their answer and responded to the attorney general's interrogatories in April of 1980. The case then lay dormant until July 11, 1983, when the court advised the parties that the case would be dismissed for want of prosecution unless some action occurred by August 15, 1983. The office of the attorney general then entered the appearance of another attorney and filed its motion for summary judgment. Defendants, on September 9, 1983, then filed a motion to dismiss for failure to prosecute. The case lay dormant for nearly 3 more years until May 28, 1986, when the attorney general presented the motion for summary judgment. The court sustained that motion and entered summary judgment April 10, 1987.

■ Appellants contend the trial court erred in granting the motion for summary judgment because the suit should have been dismissed for failure to prosecute. The general rule is that a dismissal for want of prosecution is within the sound discretion of the trial court. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446 (Mo. banc 1976). Reversal by an appellate court requires a finding that the trial court abused its discretion. *Id.* at 448. Because the ruling is discretionary it is presumed correct and appellant bears the burden of showing an abuse of discretion. *Id.* Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Id.* Appellants have not met their burden in establishing an abuse of discretion in this case.

■ Appellants acknowledge that delay alone does not require dismissal for failure to prosecute. In addition to the delay they claim the currently depressed market prices could cause them to be penalized far more seriously than had the case been brought to fruition earlier. Appellants' claim cannot be sustained, however, because they have failed to produce affidavits or any other evidence to support this claim. Nor have appellants cited cases which require dismissal in these circumstances. Had the defendants been truly concerned about the prejudicial impact of the delay in prosecution they could have called their motion to dismiss. Because they did not, the trial court could have found that defendants, who quietly accepted the benefits of ownership of the farmland, suffered no prejudice and should not now be heard to complain of the delay.

Appellants argue that chapter 350, RSMo, violates the equal protection clauses of the Missouri and United States Constitutions because it arbitrarily and without reasonable basis: (1) allows certain corporations to engage in agricultural activities but not others such as defendants; (2) allows individuals but not corporations such as defendants to own land and engage in agricultural activities; (3) allows any corporation to own farmland if owned prior to

hogs in connection with operations designed to improve the quality, characteristics, profitability, or marketability of hybrid hogs through selective breeding and genetic improvement where the primary purpose of such livestock raising is to produce hybrid hogs to be used by farmers and livestock raisers for the improvement of the quality of their herds;

(11) A bank or trust company acting as administrator or executor under the terms of a will or trustee under the terms of a testamentary or inter vivos trust created by the owner of a family farm, or an inter vivos or testamentary trust, the principal of which is shares of a family farm corporation or authorized farm corporation and which trust is created by a shareholder of the family farm corporation or authorized farm corporation. However, a bank or trust company acting in the administration of an investment trust or a management trust formed with the primary purpose of making or managing investments of income-producing property and purchasing agricultural real estate with trust funds with the primary benefits accruing to investors or shareholders in the trust is not exempt from the provisions of sections 350.010 to 350.030.

September 28, 1975; and (4) singles out appellants, whose shareholders are principally Europeans, for forced divestiture of their Missouri investment at a time when Missouri actively encourages foreign investment from the Far East.

■ The equal protection clause, as it applies to classifications relating to economic regulation, requires only that such classifications be rationally related to a legitimate state interest, *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). Such classification cannot operate to the disadvantage of a suspect class or impinge upon a fundamental constitutional right. *State Bd. of Registration v. Giffen*, 651 S.W.2d 475 (Mo. banc 1983), *citing, San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Because corporations are not a suspect class and agricultural land ownership is not a fundamental constitutional right, appellants' arguments focus on the assertion that the classification of corporations under chapter 350 is arbitrary, unreasonable, and without rational bases.

Appellants' first two arguments are rejected because rational bases exist for permitting "authorized corporations" (section 350.010(2), RSMo 1986)[2] and family farm corporations (section 350.010(5), RSMo 1986)[3] to own farmland while excluding nonexempt corporations such as appellants. An authorized corporation is one in which all shareholders are natural persons and receives at least two-thirds of its net income from farming. Thus farming cannot be a secondary business for such exempt corporations. A family farm corporation is a corporation in which at least one-half the stockholders are members of a family related to each other in a specified manner and in which active operation must include at least one person having ownership interest and exercising some management control. Nonexempt corporations cannot acquire any interest in family farm corporations.

The effect of the statute, which forms the rational basis for the classification established, is to prevent the concentration of agricultural land, and the production of food therefrom, in the hands of business corporations to the detriment of traditional family units and corporate aggregations of natural persons primarily engaged in farming. Thus, large publicly held corporations are prevented from acquiring and operating large tracts of farmland. The legislature apparently believed that the superior financial and other business resources of these corporations would have a detrimental effect on traditional farming entities. This is because the cyclical nature of the farming industry periodically causes depressed markets and losses which large, diversified corporations are better able to sustain. Thus the traditional farming entities would operate at a competitive disadvantage.

The statute also has the effect of prohibiting large corporations, already controlling

---

**2. 350.010(2) "Authorized farm corporation"** means a corporation meeting the following standards:

    (a) All of its shareholders, other than any estate, or revocable and irrevocable trusts, are natural persons;

    (b) It must receive two-thirds or more of its total net income from farming as defined in this section; ....

**3. 350.010(5) "Family farm corporation"** means a corporation incorporated for the purpose of farming and the ownership of agricultural land in which at least one-half of the voting stock is held by and at least one-half of the stockholders are members of a family related to each other within the third degree of consanguinity or affinity including the spouses, sons-in-law and daughters-in-law of any such family member according to the rules of the common law, and at least one of whose stockholders is a person residing on or actively operating the farm, and none of whose stockholders are a corporation prohibited by section 350.015 from entering into farming, or any corporation which is subject to the controlled expansion provisions of section 350.015; provided that a family farm corporation shall not cease to qualify as such hereunder by reason of any gift, devise or bequest of shares of voting stock. A person actively operating a farm shall include, but not be limited to, a person who has an ownership interest in the family farm corporation and exercises some management control or direction.

much of the processing and distribution of agricultural commodities, from buying large tracts of land for production of the commodity in which they deal, so as to vertically integrate an industry to the competitive exclusion of traditional farming entities.

It is within the province of the legislature to enact a statute which regulates the balance of competitive economic forces in the field of agricultural production and commerce, thereby protecting the welfare of its citizens comprising the traditional farming community, and such statute is rationally related to a legitimate state interest. The United States Supreme Court upheld a similar statute against an equal protection attack in *Asbury Hospital v. Cass County*, 326 U.S. 207, 66 S.Ct. 61, 90 L.Ed. 6 (1945), and the Supreme Court of Nebraska recently rejected such an attack against a state constitutional provision in *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 389 N.W.2d 269 (1986).

This analysis compels the same conclusion on appellants' claim that the statute violated their rights to equal protection because it authorizes nonexempt corporations, such as appellants, to engage in certain farming-related activities. Section 350.015 permits nonexempt corporations to hold such an interest incidental to a bona fide encumbrance; own farmland for research and experimentation; own farmland for production of crops for direct processing and not for resale; own farmland for the production of certain domestic animals, such as poultry, which is not land intensive; temporarily own farmland incidental to enforcement of liens or claims; and own farmland acquired for non-farming use.

Appellants fail to establish that this creates an arbitrary classification or is not supported by a rational basis. The statute is rationally related to a legitimate state interest in that it prevents the aggregation of farmland in large corporations to the competitive exclusion of traditional farming entities.

Appellants' claim that they were denied equal protection because, as European investors, they were singled out for enforcement of chapter 350, is unsupported by the record. It is the type of corporation and the nature of its activities that subjects it to scrutiny under chapter 350, not the origin of the investment. This is a case of first impression, and appellants have not offered evidence which shows the existence of similar corporations holding farmland.

■ The Court also rejects appellants' claim that they were denied equal protection because corporations owning land prior to September 28, 1975, were permitted to retain their farmland while those acquiring farmland after that date are required to divest their farmland. In *City of New Orleans*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511, the court considered the constitutionality of an ordinance which limited the number of street vendors by prohibiting sales by vendors except those who had continuously operated the same business for eight years. The court held that it was not a constitutional violation to deprive some vendors of their livelihood, even where they had operated legally theretofore, while permitting others to continue on, because the city could decide that newer businesses were less likely to have built up a substantial reliance interest. The court held that, "Legislatures may implement their program step by step, *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 878 (1966), in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." *City of New Orleans*, 427 U.S. at 303, 96 S.Ct. at 2517. Under this holding appellants' claim lacks merit. This argument could also be rejected on the ground that the regulations are supported by a rational basis in that future expansion of such ownership was severely restricted.

Appellants argue that the language of

section 350.030, RSMo 1986,[4] dictating compliance with the "orders of the court" is so vague and indefinite that the enforcement provisions of the statute are rendered violative of the due process clause of the fourteenth amendment to the United States Constitution and the due process clause of the Missouri Constitution, article I, section 10.

The cases cited by appellants, *State v. Young*, 695 S.W.2d 882 (Mo. banc 1985), and *City of Festus v. Werner*, 656 S.W.2d 286 (Mo.App.1983), are inapposite in that they involve statutes which were so vague that it was not possible to ascertain when a violation had occurred. In this case it is clear when a violation has occurred and if such is found by the court, section 350.030, RSMo 1986, provides: "[T]he corporation owning the land shall comply with the orders of the court, or if so ordered shall have a period of two years from the date of such order to divest itself of such land."

▮▮▮ Appellants' claim that the statute does not give corporations notice of what kinds of orders may be made is not accurate. Appellants were aware that divestiture was the ultimate sanction. The legislature might have been more precise in drafting the statute by authorizing "orders of the court to bring the corporation into compliance with the requirements of section 350.015, RSMo." However, this meaning becomes apparent when the statute is read as a whole. This Court is required to read the statute as a whole and harmonize its provisions if reasonably possible. *State ex rel. Bess v. Schult*, 143 S.W.2d 486, 489 (Mo.App.1940). An act of the legislature cannot be nullified for uncertainty if it is susceptible of any reasonable interpretations. *Id.*

The technical provisions of the numerous exceptions make it necessary for the court to have flexibility to shape a remedy without resorting to divestiture. For example, the exemption for family farm corporations requires at least one-half of the voting stock to be held by, and at least one-half of the shareholders be members of, a family related to each other within the third degree of consanguinity. The court could issue an order requiring a certain amount of stock be purchased by family members to bring the corporation into compliance with this section rather than require divestiture. That the language "orders of the court" was intended to give this flexibility is apparent when the statute, as a whole, is considered.

In this case no exceptions to the statute were applicable so divestiture was the only remedy. Appellants cannot complain that they were unaware of this penalty.

A similar argument submitted by appellants is that the provision requiring compliance with the orders of the court fails to provide: "a certain remedy" in violation of the Missouri Constitution, article I, section 14. Appellants have cited no cases which

---

**4. 350.030. Attorney general to enforce—venue—divestment of lands, failure, effect of.**—If the attorney general finds a corporation is violating sections 350.010 to 350.030, he shall institute an action in the circuit court of Cole County, Missouri, if a foreign corporation, and if a Missouri corporation in the circuit court of any county in which the corporation owns any agricultural lands or if the land is located in two or more counties, then in the circuit court of a county in which a part of the land is located. The attorney general shall file a notice of the pendency of the action with the recorder of deeds of each county in which any portion of said lands are located. If the court finds that the lands in question are being held or used in violation of sections 350.010 to 350.030, it shall enter an order so declaring. The court shall file for record its order with the recorder of deeds of each county in which any portion of said lands are located. Thereafter, the corporation owning the land shall comply with the orders of the court, or if so ordered shall have a period of two years from the date of such order to divest itself of such land. The two-year limitation period shall be a covenant running with the title to the land against any corporate grantee or corporate assignee or the successor corporation of such corporation, except those corporations excluded by section 350.015. Any lands not divested within the time prescribed shall be ordered sold by the court at public sale in the manner prescribed by law for the foreclosure of a mortgage on real estate for default in payment.

suggest that this provision requires a specific penalty. Assuming arguendo that this provision could stand for such a proposition, appellants' argument would still fail because the penalty given in this case was specifically provided for in the statute.

■ Appellants next argue that by requiring divestiture within two years, section 350.030 violates due process because it does not give defendants a reasonable opportunity to recover the value of their investment. Under similar circumstances the court in *State v. J.P. Lamb Land Co.*, 401 N.W.2d 713 (N.D.1987), held that a ten-year divestiture period existing at the time of acquisition should apply, rather than the one-year provision in the newer statutes, because the corporation was arguably in compliance with the law at the time of acquisition. In the present case the purchase was illegal *ab initio*, and thus appellants cannot argue they relied on any longer period for divestment. All that due process requires in this situation is that the sale be under conditions reasonably calculated to realize the land's value at the time of sale. *Asbury Hospital*, 326 U.S. at 212, 213, 66 S.Ct. at 64. In this case two years should be sufficient time to locate a willing buyer, particularly since appellants have known of this possibility during the nine-year course of this litigation.

■ Appellants also challenge the constitutionality of section 350.015 on the grounds that it conflicts with the Missouri Constitution, article XI, section 5, which provides: "No corporation shall engage in business other than that expressly authorized in its charter or by law, nor shall it hold any real estate except such as is necessary and proper for carrying on its legitimate business; . . . ."

■ This argument is rejected because the authorization under the constitution for corporations to own real estate does not confer any absolute right to own particular kinds of land or for any unrestricted purpose. Corporations are creatures of statute which can be limited by the legislature in the scope and nature of the business in which they engage. *Asbury Hospital*, 326 U.S. at 211, 66 S.Ct. at 63. *See also State v. J.P. Lamb Land Co.*, 401 N.W.2d at 717. This provision of the Missouri Constitution expressly limits corporations to holding only that real estate which is necessary for their legitimate business. Chapter 350 establishes that farming is not a legitimate business of corporations such as appellants.

■ Missouri courts have also recognized that a corporation's power to hold real estate could be diminished or destroyed if done so expressly or by clear implication. *Coates & Hopkins Realty Co. v. K.C. Terminal Railway*, 328 Mo. 1118, 43 S.W.2d 817 (1932). In chapter 350 the legislature expressly prohibited such corporations from owning agricultural lands.

Because all of appellants' attacks on chapter 350 have been rejected, this Court affirms the circuit court's grant of summary judgment in favor of the State.

BILLINGS, C.J., and BLACKMAR, DONNELLY, ROBERTSON and RENDLEN, JJ., concur.

WELLIVER, J., dissents in separate opinion filed.

WELLIVER, Judge, dissenting.

I respectfully dissent.

There is no rational or reasonable basis to deny appellants' ownership of agricultural land for the purpose of farming.

In *Carney v. Hanson Oil Co., Inc.*, 690 S.W.2d 404, 407 (Mo. banc 1985), this Court stated that:

[t]he Equal Protection Clause requires states to treat uniformly all who stand in the same relation to the statute at issue. *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). . . . In making classifications, the state must proceed upon a rational basis. *Allied Stores of Ohio, Inc., v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

The object of § 350.015 appears to be to keep corporate and foreign investment out of farming. There is no reasonable, rational basis to explain why corporations that owned or leased agricultural land prior to September 28, 1985 may keep their property and continue farming, including expansion of that property by 20% every five years, while denying corporations not owning or leasing land as of that date the opportunity to own land for farming. *See also Petitt v. Field*, 341 S.W.2d 106 (Mo. 1960) (excluding retail merchants that trade in commodities or other articles of personal property from obtaining a license to issue checks is arbitrary).

Section 350.030 violates the due process clause of the fourteenth amendment to the U.S. Constitution because it does not provide any guidance to the trial court in determining the appropriate penalty.

A statute can be void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972).

Vagueness, as a due process violation, offends two important values. One is that notice and fair warning require that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294–2298–99, 33 L.Ed.2d 222 (1972). *See Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Broadrick v. Oklahoma*, 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973); *State ex rel. Williams v. Marsh*, 626 S.W.2d 223, 233 (Mo. banc 1982). Additionally, the vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application. *Grayned v. City of Rockford*, 408 U.S. at 108, 92 S.Ct. at 2299; *State ex rel. Williams v. Marsh*, 626 S.W.2d at 233.

*State v. Brown*, 660 S.W.2d 694, 697 (Mo. 1983).

Section 350.030 provides that a corporation owning land in violation of §§ 350.010–.030 must "comply with the orders of the court." The legislature did not define "orders of the court." Section 530.030 is vague because it does not set forth the penalties for a violation, which may result in discriminatory application of penalties by the trial court.

The cause should be reversed.