Carolyn MONTGOMERY, Respondent,

v.

Anita CLUBB, Defendant,

Trisha FARNSWORTH, Appellant.

No. WD 49262.

Missouri Court of Appeals,
Western District.

March 7, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1995.

Application for Transfer Sustained June 20, 1995.

Case Retransferred Oct. 24, 1995.

Court of Appeals Opinion Readopted Nov. 12, 1995.

Steven Dawes Steinhilber, Kansas City, for appellant.

Wayne P. Strothmann, Patrick Andrew Woodley, Clinton, for respondent.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

Carolyn Montgomery was riding in a car driven by Anita Clubb when it collided with another vehicle driven by Trisha Farnsworth. Montgomery sued Clubb and Farnsworth for her injuries. Clubb settled with Montgomery before trial but remained in the case as a defendant. Farnsworth complains in this appeal that the trial court erred in refusing to let the jury know of Montgomery's settlement with Clubb or to let her question witnesses concerning the agreement. The matter was within the trial court's sound discre-

tion, and we conclude that it did not abuse that discretion. We affirm the trial court's judgment.

Both Clubb and Farnsworth denied responsibility for the crash which occurred in Clinton at the intersection of Missouri highways 7 and 13 on November 9, 1990. Each driver claimed to have the right of way. Montgomery was riding in the car driven by Clubb.

On February 15, 1994, the eve of trial, Clubb settled with Montgomery. She agreed to pay Montgomery $30,000 but to remain a defendant in the case for purpose of the jury's apportionment of fault. Montgomery released Clubb and her insurer from further liability. Farnsworth and the trial court knew of the settlement.

At trial, Montgomery moved *in limine* to exclude any evidence of the settlement. The trial court took the motion under advisement and told the parties to inform it before asking any questions concerning the settlement. During the trial, Farnsworth asked for leave to cross-examine Montgomery about the settlement. The trial court refused the request, and the jury never heard any evidence of it. Clubb actively participated in the trial; she denied any responsibility for the accident but did not challenge Montgomery's damage allegations. The jury returned a verdict of $100,000 for Montgomery. It assessed 35 percent of the fault to Clubb and 65 percent fault to Farnsworth.

█ In this appeal, Farnsworth complains that she should have been permitted to inform the jury of the settlement and to cross-examine Montgomery about it. She contends that the jury could not determine Clubb's true interests without knowledge of the settlement. She sought to ask Montgomery two questions about the settlement: "Have you released Anita Clubb from any liability in connection with this case?" and "Do you understand that you can only recover more money in this trial if liability and fault [are] assigned to Trisha Farnsworth?" Farnsworth argues that the settlement "realigned the positions of the parties" in the manner a "Mary Carter agreement"[1] would realign the parties' interests.

Missouri courts have severely criticized "Mary Carter agreements" because they distort the adversarial process and undermine the parties' right to a fair trial. *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 175–76 (Mo. banc 1993). The characteristic of these agreements which is the primary cause of concern is the collusive behavior of the agreeing parties which misleads judges and juries. *Id.* The courts have not declared, however, that such agreements are never allowed but that they should be reviewed on a case-by-case basis.

While acknowledging that Clubb's agreement with Montgomery was not a Mary Carter agreement in the way Missouri courts have defined them, Farnsworth contends that the settlement was like a Mary Carter agreement in that it realigned the parties' interests so as to upset the adversarial process. Because of the settlement, she argues, Montgomery did not need to focus on Clubb's fault and was free to concentrate solely on Farnsworth. Because of the settlement Clubb had no incentive to, and did not, contest damages. She contends that if a settlement has any tendency to affect a witness' interest or bias, the jury must know of the agreement.

In granting the motion *in limine*, the trial court reasoned:

We know that Clubb and Shelter [Insurance Company] don't get anything back. They pay thirty thousand dollars. They don't get anything back if the plaintiff whallops Farnsworth. It's not secret. It

---

1. The term is derived from the agreement at issue in *Booth v. Mary Carter Paint Company*, 202 So.2d 8 (Fla.App.1967). The definition of such agreements varies from jurisdiction to jurisdiction. The Supreme Court of Missouri has defined it as an agreement in which "(1) [t]he liability of the settling defendant is limited, and the plaintiff is guaranteed a minimum recovery; (2) [t]he settling defendant remains a party to the pending action without disclosing the full agreement to the nonsettling parties and/or the judge and jury, absent a court order; and (3) [i]f judgment against the non-settling defendant is for more than the amount of settlement, any money collected will first offset the settlement so that settling defendant may ultimately pay nothing." *Carter v. Tom's Truck Repair, Inc.*, 857 S.W.2d 172, 175 (Mo. banc 1993).

is not a, the "Mary Carter agreement" that was in the Tom's truck case.

. . . .

I think some of this ... depends on what the witnesses do say. It, it looks to what their testimony was in the case on what issues. I really don't know what Carolyn Montgomery is going to say on liability or anybody is going to say.

. . . .

I just simply think the potential harm of getting into all of this, and this agreement, before the jury, out weighs any probative effect it might have.

During trial, the trial court refused Farnsworth's request to cross-examine Montgomery about the settlement:

Settlements are generally not admissible. I believe in this particular case, the way it has been tried to this point, that getting into that now, the prejudicial effect of that would out weigh any probative value that it has and that's the way I am going to rule.

I do note that apparently Carolyn Montgomery's deposition was taken on January the 6th of 1992.... I suppose I might take a different light on, on things if that's a, two years ago. If, I presume she was asked in her deposition about this event and if her testimony would change in some material respect, then I might look at this again, in view of what has happened in the last two days.

Farnsworth did not contend to the court that Montgomery's testimony had changed significantly.

█ Admission or exclusion of evidence are matters for a trial court's discretion, *Kelly by Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990), and we accord such decisions much deference. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). In *State ex rel. Webster v. Lehndorff Geneva*, 744 S.W.2d 801, 804 (Mo. banc 1988), the Supreme Court of Missouri described the standard for determining whether a trial court has abused its discretion:

Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

We do not discern an abuse of discretion here.

As the trial court concluded, Clubb's pecuniary interest in the case became fixed: After settling with Montgomery, she had no pecuniary incentive in the case and, therefore, no incentive to pass blame to Farnsworth. The trial court discerned no significant change in Montgomery's testimony at trial from her deposition testimony two years earlier. The trial court's ruling was not against the logic of the circumstances. It was not arbitrary and unreasonable. While we might have ruled differently, this is certainly a case in which reasonable jurists can differ about the propriety of the admission or exclusion of the evidence. We affirm on this point.

█ In her next point on appeal, Farnsworth complains that the trial court erred in denying her request that the jury be instructed to disregard Montgomery's voluntary responses during cross-examination concerning her financial condition. Farnsworth claims that Montgomery was endeavoring to inject her alleged poverty into the case.

Before trial, the trial court granted Farnsworth's motion *in limine* to prohibit Montgomery from bringing up Montgomery's inability to pay for medical care unless it first came up during cross-examination. During cross-examination, Montgomery testified:

Q. Have you talked with your employers and made arrangements with them to take the time off from work, so that you can go to Kansas City and participate in the Pain Management Program?

A. No.

Q. You assume that that won't be a problem?

A. Yes, I do assume that.

Q. But you haven't talked with anybody about it?

A. No, I haven't.

Q. And since you were given the brochure back in April of 1993 by Dr. Charapata, you have not done anything further to follow up on this Pain Management Program. Correct?

A. I checked with my insurance company to see if they would cover it.

Q. But in terms of actually making arrangements?

A. No, I haven't.

Q. Okay, and you have no plans at this point to do that?

A. Well, you have to be able to pay for it before you can do it, so, no.

The trial court overruled Farnsworth's objection to Montgomery's responses.

She argues now that this was error because Montgomery was deliberately attempting to inform the jury of her poverty. The point is void of merit. Farnsworth's questions begged for Montgomery's explanation of why she was not getting treatment at the Pain Management Clinic. Montgomery answered. The trial court correctly overruled Farnsworth's objection and request that the jury disregard the testimony.

We affirm the trial court's judgment.

All concur.