

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| SEAN TATE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82725 |
| | ) | |
| TROY DIERKS, | ) | Opinion filed: September 22, 2020 |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE S. MARGENE BURNETT, JUDGE**

Division Two: Karen King Mitchell, Presiding Judge,
Anthony Rex Gabbert, Judge and W. Douglas Thomson, Judge

Sean Tate ("Tate") appeals from the Judgment of the Circuit Court of Jackson County following a jury trial in a wrongful death action in favor of Troy Dierks ("Dierks") and against Tate. On appeal, Tate claims the trial court erred in denying his motion for new trial for reason that the court abused its discretion in excluding the testimony of witness Jeffrey Frazier ("Frazier"). We affirm, finding that the trial court acted within its discretion in excluding Frazier's testimony.

## Factual and Procedural History

The material facts are not in dispute. This case arises out of a fatal crash involving a tractor-trailer driven by decedent Alan Tate ("Decedent"), Tate's father.

Decedent was employed by Whimsy, Inc. ("Whimsy"), a Chicago-based trucking company with a terminal in Kansas City, Missouri. On March 24, 2016, Decedent departed from Sedalia, Missouri, driving his tractor-trailer along Highway 50 en route to Kansas City, Missouri. Decedent lost control of his truck in Lee's Summit and crashed into a concrete bridge pylon. Decedent was pronounced dead at the scene of the crash.

Two claims were filed as a result of this accident.[1] First, Tate, Decedent's only surviving child, filed a workers' compensation claim against Whimsy in 2016. During the pendency of the workers compensation claim, Tate's counsel deposed John Wardlow ("Wardlow"), a Whimsy driver and former co-employee of Decedent. That deposition revealed the identity of Frazier, who was employed by another trucking company. Wardlow testified that Frazier had contacted him two to three weeks prior to the fatal crash, stating that he had observed the front right wheel of Whimsy truck #2610 – the truck which Decedent operated on the day of the crash – "wobbling." Wardlow further testified that he spoke to Whimsy's lead mechanic, Dierks, about the wobbly wheel.

After learning about the alleged problem with Whimsy truck #2610, on July 31, 2017, Tate filed a wrongful death lawsuit against Dierks which is the subject of this appeal. The petition referenced Frazier and his observations of the wobbly wheel. Discovery ensued in the wrongful death case, during which Tate did not identify Frazier as a witness in answer to interrogatories. On April 18, 2018, the trial court

---

[1] Relevant to our analysis, counsel representing Whimsy in the worker's compensation case also represented Dierks in the wrongful death lawsuit.

set a trial date of January 28, 2019, and entered its scheduling order setting deadlines for the remainder of the case. Pursuant to the trial court's scheduling order, witness lists were to be filed on or before January 8, 2019. Tate filed his witness list on January 8, 2019. Tate did not name Frazier on his witness list.

Also on January 8, 2019, Dierks filed his first motion in limine and suggestions in support of same. Dierks specifically requested therein that "[p]laintiff should be precluded from calling any witnesses not previously disclosed in [p]laintiff's discovery responses," specifically citing Tate's responses to Interrogatories No. 2 and 12. Tate agreed to the motion in limine and, pursuant to a stipulation of the parties, the motion in limine was sustained by the trial court.

On January 23, 2019, less than five days before trial, Tate notified Dierks that Frazier had been served with a subpoena to appear at trial, and indicated his intention to call Frazier as a witness. The next day, Dierks filed a motion to exclude testimony of undisclosed witness Frazier. On January 28, 2019, the day of the jury trial, the trial court held a hearing prior to jury selection and ruled that Frazier would not be allowed to testify because he had not been identified in the interrogatory answers or on the witness list. Tate requested that he be allowed to make an offer of proof of the testimony of Frazier, which the court heard prior to commencing trial. At the conclusion of the trial, the jury found in favor of Dierks. Tate filed a timely motion for new trial which included the point appealed herein, and such motion was denied by the trial court.

Tate now appeals. Further factual details will be outlined as relevant in the analysis below.

**Standard of Review**

"Trial courts have broad discretion in administering rules of discovery, which this Court will not disturb absent an abuse of discretion." *State ex rel. Delmar Gardens N. Operating, LLC v. Gaertner*, 239 S.W.3d 608, 610 (Mo. banc 2007). More specifically, "[t]he trial court has broad discretion in admitting or excluding testimony on the basis of nondisclosure in interrogatories." *DeLaporte v. Robey Bldg. Supply, Inc.*, 812 S.W.2d 526, 533 (Mo. App. E.D. 1991). Reversal of a discretionary ruling is warranted only when the lower court ruling is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988). "[I]f reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.* Discretionary rulings are presumed correct and the appellant has the burden of proving that there has been error. *Id.*

**Analysis**

In his sole point on appeal, Tate argues that Frazier should have been permitted to testify at trial. Tate argues that, although Frazier was not disclosed on the pre-trial witness list as required by the trial court, his identity and the nature of his testimony were effectively provided by his petition and interrogatory answers.

4

Tate argues alternatively that if the interrogatory answers did not adequately identify Frazier as a witness, opposing counsel's knowledge of Frazier's identity and his expected testimony demonstrates the absence of prejudice toward Dierks. We are not persuaded.

Missouri law has established that the trial court has broad discretion to exclude testimony of witnesses not properly disclosed in interrogatory responses:

> The trial court is vested with broad discretion to admit or reject testimony of a previously undisclosed witness whose identity may have been requested by interrogatory, and this court reviews only for abuse of that discretion .... 'The primary purpose of interrogatories is to aid the litigants to find out *prior to the trial* what the facts are, so that controversial issues can be ascertained and the preparation for trial and the trial limited to them all to the end of obtaining substantial justice between the party's litigant ....'

*Trident Grp, LLC v. Miss. Valley Roofing*, 279 S.W.3d 192, 201 (Mo. App. E.D. 2009) (quoting *Johnson v. National Super Markets, Inc.*, 710 S.W.2d 455, 456 (Mo. App. E.D. 1986)).

First, Tate argues that by referencing Frazier in his petition, he effectively provided Frazier as a witness because he gave Frazier's name and the nature of his testimony. Regarding Frazier, Tate's petition reads as follows:

> 9.     Dierks was told by a truck driver employed by Whimsy Trucking named John Wardlow, that he, John Wardlow, had received firsthand information from a man named Jeff Frazier that indicated that Frazier had seen the front wheels of [Decedent's] truck . . . wobbling.

Tate's assertion that Frazier and his testimony was effectively provided in the petition is misguided. Supreme Court Rule 55.05 provides that "[an] … original claim

5

… shall contain (1) a short and plain statement of the facts…."[2] A petition's 'short and plain statement of the facts' is no substitute for the rigors of the discovery process. Rather, the varied discovery tools available to counsel in the discovery toolbox are designed to illuminate the salient facts associated with a case. A party's understanding of the facts, and of relevant witnesses and exhibits, will develop and mature as investigation and discovery occur following the petition's filing. At its most simplistic, opposing counsel cannot know from the petition's short and plain statement whether the person named even has the capacity to testify. Given that Frazier was never identified in Tate's discovery responses, Dierks would be entitled to presume that, whatever Tate's belief at the time the petition was filed, he had concluded (for any number of possible reasons) that Frazier was not a competent, available, or helpful witness.

Further, a petition merely commences a case. The petition's paragraph nine, regarding Frazier, is simply an allegation of fact, not a fact itself. As we discuss next, when a witness is not disclosed after being requested by interrogatory, an allegation in a petition is simply insufficient to make the leap from petition to the witness stand for a person named in such petition.

Tate next argues that he has 'effectively provided' Frazier's name in his interrogatory answers. "The purpose of pretrial discovery includes facilitating and expediting the preparation of cases for trial, guarding against surprise and concealment, reducing delay, and assisting in determining the truth." *Marmaduke*

---

[2] All references to Rules are to Missouri Rules of Civil Procedure (2020), unless otherwise indicated.

*v. CBL & Assocs. Mgmt.*, 521 S.W.3d 257, 270-71 (Mo. App. E.D. 2017). "If the rules of discovery are to be effective, …, appropriate sanctions must be imposed on those who disobey the rules." *Id.* at 271.

Dierks propounded interrogatories number 2 and 12 seeking to elicit those persons with knowledge about the case. These interrogatories and the answers thereto are as follows:

> **Interrogatory 2**. Identify by name, telephone number, and address each person who you believe has knowledge or information about the claims you have asserted against Defendant in this lawsuit, about any of the injuries or damages you may claim in this lawsuit, or about the factual allegations contained in your pleadings. For each individual identified, please briefly state the nature of the information you believe the person possesses.
>
> **ANSWER**: [Objections omitted. [3]] Without waiving said objection, plaintiff is aware of the witnesses listed in the police report (which defendant has), with address and phone numbers, defendant, and John Wardlow (who defendant has deposed) and defendant's manager Larry King. In addition, Mary Tate, above. In addition, there will be expert witnesses designated.
>
> **Interrogatory 12**. Please state all facts and identify all witnesses and documents that you believe support the claims of negligence or wrongful conduct on the part of Defendant that are described in Paragraphs 9 through 11 of your Petition, as well as any other acts or omissions by Defendant that you believe caused or contributed to the cause of decedent's death.
>
> **ANSWER**: Defendant Dierks and witnesses Wardlow and King' [sic] depositions in the workers compensation case, which defendant's

---

[3] Tate's interrogatory answers provided to opposing counsel on March 15, 2018, were in response to Dierks' interrogatories dated December 14, 2017. No request for an extension was requested by Tate, and none was granted. Thus, Tate's answers were in violation of Rule 57.01(c)(1), which requires answers be provided within 30 days after service of the interrogatories and the objections would not have been well taken by the Court.

attorneys have possession of [sic]. Other discovery is ongoing, so additional information will be supplemented by an appropriate expert witness, who will inspect the truck.

Tate did not disclose Frazier in Interrogatory 2. First, Tate references witnesses named in the police report. In his petition, Tate has alleged Frazier observed the wobbly wheel weeks prior to the accident. Therefore, Frazier would not be a witness listed on the police report created on the day of the fatal accident. Neither is Frazier identified by proper name, as Tate did with other witnesses (Wardlow, King, and Mary Tate). It is also clear that Frazier is not an expert witness, and thus is not named by Tate's collective reference to expert witnesses.

It is equally clear that Tate did not disclose Frazier in Interrogatory 12. Tate argues that there was an obvious mistake in this answer in that the preposition 'in' should have been inserted after the word 'witnesses' so that the answer would read 'witnesses *in* Wardlow and King depositions.'" He reasons that in the face of his typographical error, "witnesses Wardlow and King' depositions" properly disclosed Frazier because not only did opposing counsel understand the meaning of the answer, but also that the only "witness named" in the Wardlow deposition was Frazier. These arguments fail.[4]

First, Tate's argument requires Dierks to presume there was a word missing when there was no reason for Dierks to do so. Second, if Dierks made such a speculative presumption, then Dierks would be required to correctly guess not only

---

[4] Notably, Tate admits in his brief that his interrogatory answer was "incomplete" and "should have been answered by naming Jeff Frazier."

*what* word was missing, but *where* in the sentence the missing word should be inserted. Clearly, Tate's omission changed the meaning of his answer on its face. By omitting the preposition "in", the word "witnesses" modified the names it immediately followed: Wardlow and King. Dierks simply had no reason to speculate that a word was missing from this particular answer.

Next, Tate argues that Dierks understood his answer to Interrogatory 12, despite the error. Not only is this speculative, at best, but the trial record demonstrates that Dierks did not understand Tate's intended answer. At the hearing on Dierks' motion to exclude Frazier, counsel for Dierks stated: "[I]t wasn't witnesses identified in Wardlow and King's depositions, as he put in his [motion to exclude] response. It was witnesses Wardlow and King. He identified those witnesses, not witnesses in those depositions." Hence, there was no clear understanding by Dierks of what was meant by Tate in his answer to Interrogatory 12. Opposing counsel cannot be tasked with reading words into discovery responses where they do not exist.

Further, Tate argues that Dierks must have known of Frazier's existence because witnesses in the Wardlow deposition were limited to Frazier. This is a second-step argument, in that for us to consider it we must first find that Dierks had a duty to know of the missing word in Interrogatory 12, "in", which we do not, and neither did the trial court find such a duty.

Finally, Tate argues that although he did not specifically identify Frazier as a witness in his answer, Dierks did not seek clarification regarding Tate's answer to Interrogatory No. 12. This is simply not relevant; Dierks had no duty to seek

9

clarification.    We echo the words of the trial court: "[T]hey don't have to [seek clarification]. That's not their obligation. It's your obligation."  Indeed, Rule 56.01(e) imposes a duty to seasonably supplement prior discovery responses.  It was Tate who had the duty to supplement his answers, not Dierks's duty to seek clarification.

Moreover, the trial court also found that Tate failed to disclose Frazier as a witness in accordance with its scheduling order.  At paragraph 10, the court's order required:

> The parties shall file witness/exhibit lists on or before 10 days before Pre-trial.[5]  The witness/exhibit lists shall include all person and exhibits then known and reasonably expected to be offered at trial and said list shall include detail as to make the witnesses and exhibits reasonably identifiable, including the addresses and phone numbers of all witnesses.

While Tate timely filed his witness list on January 8, 2019, it failed to identify Frazier.  In violation of the court's order, Tate sought to disclose Frazier as a witness five days prior to trial, and more than two weeks after witness lists were to be filed with the court.  Rule 62.01 provides that once entered, the court's scheduling order controls the subsequent course of the action.  Setting a deadline for the specific disclosure of witnesses to be called at trial is a proper use of a scheduling order.

Tate argues that he did not disclose Frazier in a timely manner pursuant to the scheduling order's deadline because at the time of filing his witness list, Tate did not know Frazier's whereabouts or contact information.  Tate "did not believe it was appropriate to list a trial witness whose whereabouts was unknown and who would

---

[5] There is no argument that 'ten days before Pre-trial' was January 8, 2019.

10

consequently not be called at trial."[6]  We find this argument disingenuous.  At a minimum, Tate could have disclosed Frazier in a timely manner by providing the information known at that time – namely, Frazier's name and the fact that his whereabouts were being investigated.[7]  Instead, despite the apparent importance of Frazier's testimony and *knowing* that he wanted to call Frazier, Tate demonstrated no compliance with the trial court's scheduling order and remained silent on his intentions.

Not only was Frazier not identified in Tate's interrogatory answers and the witness list, Tate stipulated to the exclusion of any undisclosed witnesses, including Frazier.  Dierks filed his first motion in limine on January 8, 2019 – the same day Tate's witness list was filed with the court – seeking to preclude any undisclosed witnesses from testifying.  Tate argues that this demonstrates Dierks' knowledge of Frazier and his testimony.[8]  To the contrary, the motion in limine sought to exclude *any* undisclosed witness or hearsay statements.  Further, while Dierks had knowledge of the petition's allegation regarding Frazier, any mention of Frazier in the motion in limine demonstrates Dierks' concern with how such allegation might be proven by Tate given that Frazier himself would not be testifying since he was not

---

[6] This argument is contrary to Tate's repeated assertion that the existence of Frazier and his testimony were known by both parties for nearly two years prior to trial.  Further, the inability to locate witnesses just days before trial is yet another appropriate reason a trial court might require the parties to identify their witnesses at some reasonable time prior to the trial.

[7] In the words of the trial court, "[E]ven if you only had a name, that person should have been identified in some fashion. In an answer to an interrogatory or a witness list." Trial Tr., 15, Jan. 28, 2019.

[8] Tate relies partially on the fact that Dierks trial counsel represented Whimsy in the worker's compensation case, and thus heard Wardlow's deposition in which Wardlow identified Frazier and what Frazier saw.  This, however, provided Dierks with no more information than the allegation made in the petition, and neither did it provide Dierks with Frazier's capacity to testify or other vital information necessary to prepare for trial.  Further, it does not justify the failure to name Frazier in interrogatory answers or the witness list.

11

listed in the interrogatory answer or the witness list. Moreover, if Tate was, in fact, investigating Frazier's whereabouts in order to enable his disclosure as a witness, it is illogical that Tate would have stipulated to such a request.

Tate's final argument is that even though Dierks stipulated to the motion in limine excluding non-disclosed witnesses, and even though Frazier was not disclosed as a witness in the interrogatory answers or included on the witness list, Dierks suffered no prejudice because he knew of Frazier's identity and the likely contents of his testimony. Further, Tate claims Dierks was not prejudiced because Dierks had the opportunity to interview or depose Tate in the five days before trial. We cannot agree.

Prior to imposing sanctions upon the errant party "[the] trial court first will determine whether in the particular situation the opposing party has been prejudiced." *Laws v. Wellston,* 435 S.W.2d 370, 375 (Mo. 1968). "In making a determination as to prejudice to the adversary the trial court should not ignore the spirit of the rule; i.e. that the rules of discovery were designed to eliminate, as far as possible, concealment and surprise ...." *Crompton v. Curtis-Toledo, Inc.,* 661 S.W.2d 645, 650 (Mo. App. E.D. 1983).

Rule 61.01(b) grants trial courts the power to take "just" action in regard to a party's failure to answer interrogatories. "Whether a party is prejudiced by evasive answers to interrogatories so that exclusion of testimony is proper is a matter left to the discretion of the trial court." *McClure v. McIntosh,* 770 S.W.2d 406, 410 (Mo. App.

12

E.D. 1989) (citing *Missouri Highway and Transportation Commission v. Pully*, 737 S.W.2d 241, 245-46 (Mo. App. W.D. 1987)).

Here, it is clear Dierks *was entitled to rely* on Tate's answers to interrogatories in determining how to prepare his defense. Further, Dierks *was entitled to rely* on the witness list filed by Tate. Without being named in discovery or on the witness list, Dierks may reasonably rely on Frazier's apparent absence and prepare for trial accordingly. Further, the fact that Dierks was allowed to interview Frazier a few days prior to trial is insignificant in that it does not make up for the inability to prepare for Frazier's testimony in the years leading up to trial and leaves Dierks in an unenviable trial position.

A trial court has broad discretion in choosing a remedy for a party's failure to disclose a witness during discovery. *Fairbanks v. Weitzman*, 13 S.W.3d 313, 327 (Mo. App. E.D. 2000). "Exclusion of testimony is an available sanction where a party has failed to identify a witness in response to interrogatories." *Moore v. Weeks*, 85 S.W.3d 709, 722 (Mo. App. W.D. 2002) (citing *Garrison v. Garrison*, 640 S.W.2d 179, 180 (Mo. App. E.D. 1982)). Under these circumstances, it was well within the trial court's discretion to exclude the proffered testimony as a sanction for failing to identify Frazier as a witness in response to interrogatories as well as the court's scheduling order. Had the trial court ruled otherwise and allowed Frazier to testify, Dierks clearly would have been prejudiced. We find that the trial court did not abuse its discretion in excluding such testimony.

## Conclusion

The judgment of the trial court is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.