**WATKINS INVESTMENT COMPANY, d/b/a Radio Station KRFG, Plaintiff-Respondent,**

v.

**WILLIAM B. TANNER COMPANY, INC., Defendant-Appellant.**

No. 13506.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 22, 1985.

Lincoln J. Knauer, Jr., Farrington, Curtis, Knauer, Hart & Garrison, Springfield, for defendant-appellant.

John A. Watkins, Greenfield, for plaintiff-respondent.

HOGAN, Judge.

Defendant William B. Tanner Company, Inc., appeals from an order of the Circuit Court of Lawrence County dismissing its counterclaim for failure to prosecute. The cause was originally argued and submitted at the June 1984 session of this court at Springfield. An opinion was prepared and filed in due course; a vigorous motion for rehearing caused the panel to withdraw the original opinion and order supplementation of the record to see if some basic or novel principle of law had been overlooked.

The action was commenced in the Circuit Court of Dade County on June 5, 1975. Plaintiff, doing business as Radio Station KRFG, averred that defendant, a Tennessee corporation, had offered to sell and plaintiff had agreed to purchase a radio programming service called "Instant Library Service." Such service consisted of 3,640 one-minute spot announcements represented by defendant to be "up-to-date and varied musical and commercial productions of the highest quality and suited to the present format of Radio Station

KRFG." Plaintiff alleged payment to the defendant in the amount of $4,620 by execution of seven (7) serial promissory notes payable to the defendant in the amount of $660 each. It was further averred that defendant's representations were false because the recordings—which plaintiff agreed to broadcast—were not up-to-date, nor in any manner suited to the format of Radio Station KRFG.

The plaintiff further alleged that when the "Instant Library Service" was received on September 26, 1974, it discovered the "fraud perpetrated" and offered to rescind the contract and requested return of the promissory notes by defendant, but defendant refused. The defendant was served outside the state on June 12, 1975.

The defendant promptly petitioned the United States District Court for removal. On September 5, 1975, that court found the requisite jurisdictional amount was not in dispute and remanded the case. On October 16, 1975, defendant filed an answer admitting execution of the contract, denying upon information and belief that it was qualified to do business in Missouri and denying that the contract was executed in Missouri. As an affirmative counterclaim, the defendant averred that on or about September 10, 1974, the parties entered into a written contract, which was incorporated by reference as an exhibit, by the terms of which defendant agreed to furnish plaintiff radio station KRFG its "Instant Library Service." In consideration thereof, plaintiff agreed to pay the defendant $4,620, payable at $55 per month for a period of 84 months, and in addition, to furnish defendant with 3,640 one-minute spots in broadcast time, which were to be delivered to the defendant in the "same manner as cash."

It was further alleged in the counterclaim that: 1) defendant had furnished all materials and services required by the contract to the date of pleading, and remained willing and able to perform; 2) that plaintiff had made no payment on the contract and the sum presently owed the defendant was $4,620, of which $495 was currently due; 3) that plaintiff had refused and continued to refuse to permit defendant to utilize any of the 3,640 spot announcements to which the defendant was contractually entitled, and that the total value of the spot announcements to defendant was $2.75 each, therefore the current value of the service promised by plaintiff was $10,010; 4) that because of plaintiff's anticipatory breach, defendant had been unable to use Radio Station KRFG as a "trade" station, to defendant's damage in the amount of $20,000; 5) that because of plaintiff's anticipatory breach of its contract, defendant had been required to purchase other advertising, to defendant's damage in the amount of $5,000. Prayer of the counterclaim was for $39,630 plus attorney's fees and expenses. On October 20, 1975, plaintiff filed an answer to defendant's counterclaim. With the filing of this answer on October 20, 1975, the cause was technically at issue in the Circuit Court of Dade County. Plaintiff does not object to dismissal of the claim. It is the propriety of dismissal of the counterclaim which is in issue on this appeal.

On the same day it filed its answer to defendant's counterclaim plaintiff served interrogatories on the defendant. The questions propounded to defendant included a question whether the serial notes had been received by the defendant, and other matters. Upon motion to compel answers, defendant answered on November 25, and the answers indicated a response that defendant had received no promissory notes. On January 9, 1976, the defendant moved the court for a change of venue and a change of judge. The motion was granted and the cause ordered transferred on January 23, 1976. The files were received in the Circuit Court of Lawrence County on January 29, 1976.

No further docket entry appears until February 23, 1977, when the plaintiff's attorney moved to withdraw, representing that plaintiff had secured other counsel. On March 11, 1977, the motion was granted. No further activity is apparent until

June 2, 1978, when counsel for defendant addressed the clerk of the court as follows:

"This case is on your dismissal docket, but is very much a live case. Interrogatories are still being exchanged, and the case is one which will be tried on plaintiff's petition and on defendant's counterclaim. If there is any further showing which need be made to be sure that the case is not dismissed, please let me know by collect telephone call so that I may file whatever pleadings are required."

Contemporaneously with this letter, a set of interrogatories was drafted by counsel for the defendant and served upon the plaintiff; the filing date was June 5. The interrogatories propounded were directed to the value of "spot announcements" at various times, and to the plaintiff's version of its negotiations with defendant. On July 5, 1978, these interrogatories were answered. On July 20, plaintiff filed a motion to compel an answer to one of the questions which had been propounded to the defendant as part of plaintiff's interrogatories of October 20, 1975. Plaintiff also filed a second, supplemental set of interrogatories, requesting information concerning receipt of the promissory notes plaintiff allegedly delivered to the defendant.

On October 11, 1978, counsel for defendant addressed the clerk of the court, advising the court that plaintiff had filed a motion to require the defendant to produce a financial statement (part of the plaintiff's original interrogatories, as just noted) and continued:

" ... and we have agreed with plaintiff that such a motion may be sustained without objection on proviso that the financial statement not be filed in the court records for public inspection, but that the statement simply be provided to counsel for his use in necessary trial preparation. In fact, I requested such a statement from my client about a month or six weeks ago, and apparently that request has benen [sic] lost in the corporate shuffle somewhere. Today I am writing them to remind them to furnish that. I'd be obliged if the court could grant thirty days to allow for the mail and some shuffling around in Nashville."

On November 13, 1978, counsel for defendant wrote the circuit clerk, assuring her that by agreement with counsel for plaintiff, defendant's August 31, 1975, balance sheet had been furnished to plaintiff, and it was his understanding that he need not further supplement the defendant's answers to the plaintiff's first set of interrogatories.

On June 11, 1979, defendant's counsel requested a trial setting during the court's September term. On June 13, 1979, plaintiff's counsel, in vigorous protest, moved the court to compel defendant to answer such of plaintiff's interrogatories as remained unanswered. It will be recalled that the unanswered interrogatories dealt with the serial notes given by plaintiff to defendant. Finally, on December 11, 1979, defendant acknowledged receipt of 7 promissory notes in the amount of $660 each, adding conclusionally that "[s]aid notes were not received 'in payment' for services provided ... but merely evidenced the cash debt of Four Thousand Six Hundred Twenty and 00/100 Dollars ($4,720.00)." With respect to negotiation, defendant answered that it had not negotiated any of the notes. Counsel for defendant advised the clerk (having earlier asked for a September setting) that he and counsel for plaintiff had agreed the case might be "passed" at the January 1980 term so the parties could obtain depositions from out-of-town witnesses.

1980 passed without docket entry but on March 7, 1981, defendant's counsel gave notice to take plaintiff's deposition.[1] Plaintiff's counsel responded by giving notice to defendant to produce Zack Hernandez, defendant's vice-president, for deposition at the same time. On June 25, 1981, counsel

---

1. The CEO of Watkins Investment Co., owner of Radio Station KRFG, represented himself at this time.

for defendant addressed the trial court by letter, noting that the cause had been set for trial or dismissal. Defendant's counsel continued:

"[Opposing counsel] and I would like to try the case sometime during the week of November 16, November 23, or December 7, if any of those weeks is convenient to you. We have selected a substantial lead time for the trial because there is a question in the case which may require your judicial intervention before matters proceed. I have previously noticed [plaintiff's counsel] to give a deposition in the case, and he has responded by noticing me to produce a vice president of the William B. Tanner Company there in Greenfield for a corresponding deposition at the same time. I suspect we will go through that same procedure again, as soon as I find a deposition date convenient to Mr. Watkins, and when the notice to take Mr. Hernandez' deposition comes in again I will probably be filing a motion to quash the notice on the grounds that Hernandez knows nothing about the matter and that it is burdensome to produce him for that reason. You may have to rule on that motion. Depending on which way that ruling goes, we have allowed the lead time noticed here so as to accommodate Mr. Watkins and Mr. Hernandez' schedules as much as possible...."

Counsel for plaintiff promptly responded, stating to the court that defendant's counsel spoke only for himself in suggesting that the case be retained on the docket. Counsel for plaintiff went on to say that plaintiff was amenable to having the cause tried at the times suggested by defendant's attorney, i.e., in November or early December 1981, provided discovery could be completed by that time. Otherwise, counsel indicated he intended to move for dismissal.

On June 29, 1981, the trial court addressed both attorneys by letter, stating that it had not had time to review the file, but:

"... In any event, since the dismissal docket for Lawrence County has been out several weeks, I feel because of the age of the case, [the claim] together with [the] counterclaim, if any, should be dismissed on June 30th, for lack of prosecution, but without prejudice. By copy of this letter I am so instructing the Circuit Clerk to make such an entry.

Either party may file a motion to reinstate in accordance with my rules and I will rule on [the] same ex-parte."

The court went on to say that if the case were reinstated, it would be set for trial at some time during its September term. The court further indicated its desire to cooperate with the parties as far as the time schedules were concerned, stating it could give no ironclad assurances that the case would be set for hearing on one of the dates requested.

The next docket entry is dated July 22, 1981; the docket sheet indicates that a motion to reinstate the case on the docket was filed. This motion was supplemented, and the "suggestions" filed by defendant's counsel in support of the supplemental motion to reinstate the case represent to the court, among other things, that: a) the case had been delayed due to the difficulty of keeping track of a key witness, the witness who conducted the original sales interview with the plaintiff; that this witness had now been located in the Los Angeles area, and arrangements had been made either to preserve this witness' testimony or obtain his presence at the trial; b) that the case involved a Memphis corporation, Memphis attorneys and a missing witness in Los Angeles, California, all of which had contributed, together with the difficulties of obtaining records of the transactions, to the delay in getting the action litigated; 3) that no damage had resulted to any party, and d) that the case could be tried by December 31, 1981. Some vigorous suggestions in opposition to the motion to reinstate were filed by the plaintiff, but they shall not be set out at length here.

On July 29, 1981, the trial court addressed a letter to counsel for both parties, indicating that although it had considered dismissing the case for lack of prosecution, no docket entry had been made and it was of the opinion the cause was still pending. The court stated unequivocally that the case would be set for trial at some time "during the September term at Mt. Vernon which commences on September 14th." The file indicates that the trial was set for December 1, 1981.

Thereafter on August 17, defendant wrote counsel for plaintiff, stating that he had made arrangements to take the deposition of plaintiff's counsel and Mr. Zack Hernandez, an officer of the defendant company. Defendant's counsel asked for the production of certain relevant materials, and indicated defendant would produce such of the promissory notes as it had in its possession. After the original record was filed here and after the original opinion was withdrawn, counsel for defendant sought to supplement the record to show that the deposition was taken. Counsel for plaintiff joined in the stipulation to supplement the record only to the extent of agreeing that a deposition was taken. The supplementation indicates only that a deposition was taken, in Memphis, on 17 November 1981. The deposition was not filed, and counsel for plaintiff does not concede that the documents which defendant agreed to produce were produced.

In any event, plaintiff had propounded further interrogatories to defendant on October 6, 1981. These interrogatories had to do with and requested information concerning paragraphs 4, 6 and 7 of defendant's counterclaim, and plaintiff asked defendant to state its net worth. On October 9, counsel for defendant addressed the trial court by letter. The letter begins thus:

> "Judge, you have us set for a pretrial conference in this case on October 22. The case is set for trial to start December 1.
>
> The counterclaim in the case is brought by William B. Tanner Company,

and includes a count seeking recovery on seven promissory notes. We took seven notes, identical except for the payment dates, as part of the purchase price in selling Mr. Watkins' radio station what we call our Instant Library Service.

> In the meantime, my client has lost five of the original notes, and we can only produce two of the originals. John Watkins admits execution of the seven original notes, so there is no dispute about their terms or conditions, just their whereabouts...."

Counsel went on to propose that loss of the serial notes be proved by affidavit, and filed defendant's affidavit, alleging, among other things: a) that none of the seven notes had ever been negotiated; b) that the remaining five notes had been lost or mislaid and could not be located by the defendant. This affidavit was dated April 11, 1980, and was filed in court on October 13, 1981.

We gather from the correspondence that some kind of pretrial conference was set for October 22, 1981. We cannot say whether a pretrial conference, in the usual sense, was held, for no order appears anywhere in the file. However, on November 5, defendant's counsel filed a document entitled "Defendant's Answers to Plaintiff's Interrogatories." This document consisted principally of objections to the Interrogatories filed by plaintiff on October 6. Defendant's counsel indicated that defendant had not, but would dismiss, part of its counterclaim. On November 13, defendant's objections to plaintiff's interrogatories were overruled and defendant was given 10 days to answer. On November 25, plaintiff's counsel advised the trial court that its interrogatories had not been answered, stating that:

> "Since your order of the 13th was as required by Rule 61.01(b)(2), I believe this operates as a dismissal of defendant's counterclaim...."

On the same day, the trial court advised the clerk that because plaintiff had not

received answers to his interrogatories, the cause could not be tried December 1, 1981, but stated in unequivocal terms that the case would be set during the January 1982 term of court. The court also advised counsel that the case was becoming a sore spot and that he intended to bring the matter to trial.

On December 2, 1981, defendant answered the interrogatories propounded by plaintiff in October. These answers were made subject to the objection that they were privileged, and subject to other objections that defendant's net worth be kept confidential. On December 21, plaintiff filed a motion to strike defendant's pleadings because defendant had failed to make timely answer to the interrogatories of October 6, and still refused to answer interrogatories two and three. Plaintiff also filed additional interrogatories and requested production of certain documents. On January 4, the defendant filed objections to the additional interrogatories and objections to the request for the production of documents. The defendant also dismissed paragraphs six and seven of its counterclaim, wherein it had claimed $20,000 in damages because it was unable to use Radio Station KRFG as a "trade station" and further claimed damages in the amount of $5,000 as a result of being forced to purchase other cash spot announcements at higher rates. In our view, defendant's affidavit of October 13, 1981, substantially admitted payment, so we may consider that the counterclaim had been diminished in the amount of $4,620 before the partial dismissal of January 4, 1982. From and after January 4, 1982, therefore, defendant's counterclaim consisted of a claim that it had been damaged in the amount of $10,010 because of plaintiff's refusal to use the spot announcements defendant had furnished.

On January 29, 1982, counsel for defendant wrote the trial court as follows:

"This morning I received your Motion Day docket setting motions in Lawrence County on February 8.

I will be in travel status on February 8, returning to Missouri from the south, and will not arrive until well after Noon. I think we get back about 4:00 p.m. that day.

I tried to call [opposing counsel] today but could not reach him so I am writing this letter to advise that I cannot be present . . . ."

Counsel went on to say that he considered "this motion" moot, because the unanswered interrogatories, or those answered subject to objection, dealt with parts of the counterclaim already dismissed. Counsel for plaintiff addressed the court on January 30, stating that he did not agree with the conclusion that the motion or motions filed were moot, but agreed to have the motions "passed over" on February 8, 1982. The motions or objections were again "passed by agreement" on April 9, 1982.

On April 8, 1983, counsel for defendant appeared in court and about that time furnished part of the information plaintiff had requested on December 2, 1981, specifically, rate schedules. Counsel for defendant also stated that various other documents requested by plaintiff in December 1981 could not be located.

The next entry we find on the court's docket is dated July 26, 1983, and is as follows:

"Motion to Retian [sic] Case on Docket filed. Notice filed. Answers to Interrogatories filed. Defendant's Answers to Plaintiff's Interrogatories 2 and 3, filed October 5, 1981, filed. Rate schedule of William V. Turner Company filed."

The motion filed by defendant at this time states:

"This matter was last before the Court in April 1983 for argument of supplemental discovery motions. At that time [plaintiff's counsel] was not present in Court, for the asserted reason that he received no notice of the law day setting.

Counsel has contemporaneously filed answers to outstanding discovery requests.

Counsel believes that all discovery has been completed and that the case may be set on the Court's winter calendars [sic] and tried prior to the first of the year...."

Notice of hearing on this motion was given by defendant's counsel to plaintiff's counsel on July 26, 1983. Plaintiff filed suggestions in opposition to retaining the case on the docket, noting among other things that defendant had taken depositions on August 21, 1981, and since that time had made no effort to move the cause toward trial.

On July 26, 1983, another member of the firm representing defendant locally advised the court that the attorney who was handling the case was out of the city, but was expected to return on August 3 or 4. The court was asked not to take any action until the attorney who was attending to the case returned. A notice for hearing of the motion to retain on the docket was given to plaintiff's counsel; the matter was set for August 12, 1983.

On August 12, 1983, the following docket entry was made:

"Plaintiff has two weeks to file specific objections. Defendant is to have dates available for trial setting. This case is to be placed on next Law Day Docket."

On August 24, 1983, plaintiff again propounded interrogatories to the defendant, to which defendant objected on September 2. Plaintiff again moved for dismissal for failure to prosecute.

On August 24, 1983, the trial court wrote both attorneys indicating that he had been ill and that the entry of August 12, 1983, had been made by an Associate Circuit Judge. The court continued:

"Now, I am not too sure what [the docket entry of August 12, 1983] means. It was *my* intent on August 12th to determine whether the petition and counterclaim should be dismissed for reason of lack of prosecution. Since ... this issue has apparently not been determined I feel that ... there must be a definitive ruling as to dismissal of both the petition and counterclaim.

I am herewith setting all pending motions in this matter for September 8th at *8:30 A.M.* ...."

On September 8, 1983, the trial court made the following entry:

"Counsel for both parties appear and argue issue of whether petition and counterclaim should be dismissed for lack of prosecution. Court finds that since case has been pending since 1975 and that ... the case has been on the dismissal docket on more than one occasion that the case should be dismissed for lack of prosecution. Plaintiff's petition is dismissed with prejudice and defendant's counterclaim is dismissed with prejudice for lack of prosecution...."

Some further entries were made; we shall notice these as material to the appeal.

An explanatory preliminary word is appropriate. The original record on appeal filed in this case was doubtless sufficient to comply with the rules of appellate procedure, but for the most part it consisted of selected documents and a dreary list of docket entries. To reiterate, the vigorous motion for rehearing which was filed caused this court to exercise its discretionary right to supplement the record. See present Rule 81.12(e); *Donati v. Gualdoni*, 358 Mo. 667, 671–72, 216 S.W.2d 519, 520–21[2] (1949); *Lange v. Baker*, 377 S.W.2d 5, 7[2] (Mo.App.1964). It was therefore ordered that the circuit court's whole file be sent forward so this court might obtain a better understanding of the particular facts of the case. The contents of the record have been recited at tedious length, as this court has been able to understand them.

■ Reciting general rules concerning the dismissal of cases for lack of prosecution would serve very little purpose. As the appellant argues, this court has held on several occasions that delay in prosecuting an action does not, of itself, justify dismiss-

al for failure to prosecute. *Laurie v. Ezard*, 595 S.W.2d 336, 337[3] (Mo.App. 1980). Nevertheless, delay in prosecuting an action is a factor to be considered, *Esslinger v. Roach*, 463 S.W.2d 861, 862 (Mo. 1971), and inasmuch as an affirmative counterclaim has the nature, characteristics and effect of an independent action or suit by the defendant against the plaintiff, *McDowell v. Schuette*, 610 S.W.2d 29, 36 (Mo.App.1980); *Standard Insulation and Window Co. v. Dorrell*, 309 S.W.2d 701, 704[5] (Mo.App.1958); *Cross v. Robinson*, 281 S.W.2d 22, 26 (Mo.App.1955), we see no reason why the rules governing dismissal for want of prosecution should not apply to affirmative counterclaims as they do to the plaintiff's claim itself. It is true that both the first sentence of our Rule 67.02 and Fed.R.Civ.P. 41(b) in terms provide a remedy for a defendant, but it is generally agreed that both rules merely partially codify an inherent power of the trial court which exists in the absence of statute or rule. *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Guhman v. Grothe*, 346 Mo. 427, 430, 142 S.W.2d 1, 2[2] (1940); *Wiles-Chipman Lumber Co. v. Pieper*, 176 S.W.2d 50, 52[2] (Mo.App.1943).

■ As this court observed in *Laurie v. Ezard*, 595 S.W.2d at 338, whether a claim has been diligently prosecuted must be decided on a case by case basis. However, a lengthy period of delay *may* be enough to warrant dismissal if the party has been warned that he must act with more diligence. See *West v. Gilbert*, 361 F.2d 314, 316[4, 5] (2d Cir.1966), cert. denied 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966). 9 Wright and Miller, Federal Practice and Procedure § 2370, p. 206 and authorities cited marginally n. 8 (1971).

Our inspection of the trial court's record indicates that this cause was first placed on a dismissal docket June 30, 1979. For whatever reason, the cause was reinstated, and counsel for defendant stated his understanding was that the case would be set for trial sometime during the September 1979

term of the Lawrence County Circuit Court. On July 1, 1981, the trial court indicated it believed the cause should be dismissed, but without prejudice. The court further instructed the clerk to make such an order, but on July 31, 1981, counsel were advised that the cause would be retained on the docket. The trial court advised the parties to be present in court for a trial setting on September 14, 1981. The matter of a trial setting dragged on until February 8, 1982, because of pending motions; counsel agreed at that time the matters pending might be "passed over." Two years later, the cause was again put on a dismissal docket; in August 1983, an associate circuit court judge, acting during the illness of the regular judge, ordered the defendant to "have dates available for trial setting at the next motion day." However, the trial court, by its letter of August 24, 1983, warned counsel in the strongest terms that it was his intent to determine whether the petition and counterclaim should be dismissed for lack of prosecution. On September 8, the parties appeared and argued the question. The trial court concluded that both the claim and counterclaim should be dismissed with prejudice for failure to prosecute. Of course, counsel for defendant upon motion to reconsider announced it could try the case at any time upon 30 days' notice pending completion of discovery, but counsel had been making such assurances since 1979.

■ The ultimate and dispositive question before this court is whether the dismissal constituted an abuse of discretion. There is an abuse of discretion when the trial court's ruling is clearly against the logic of the circumstances then before the trial court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. However, if reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446,

448–49[2] (Mo. banc 1976); *James v. Turilli,* 473 S.W.2d 757; 763 (Mo.App.1971); *Anderson v. Robertson,* 402 S.W.2d 589, 593[3, 4] (Mo.App.1966). Applying the forgoing standard to the particular facts of this case, we cannot say the trial court abused its discretion. Accordingly, the judgment is affirmed.

PREWITT, J., and FLANIGAN, Alt.J., concur.

MAUS, P.J., recuses.