BRANSON HILLS ASSOCIATES, L.P., Plaintiff–Appellant,

v.

FIRST AMERICAN TITLE INSURANCE COMPANY and Hogan Land and Title Company, Inc., a Missouri Corporation, Defenants–Respondents.

No. 28605.

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 2008.

James R. Sharp, Springfield, MO, for Appellant.

J. Michael Bridges, Lincoln J. Knauer, Jr., Springfield, MO, for Respondents.

JEFFREY W. BATES, Judge.

Branson Hills Associates, L.P. (BHA) appeals from a judgment dismissing the underlying action with prejudice for failure to prosecute. BHA contends the trial court abused its discretion in dismissing the case because BHA was moving its case forward. This Court affirms.

## I. Factual and Procedural Background

In 1995, BHA began negotiating with several parties regarding a real estate transaction involving several hundred acres of property in Taney County, Missouri. Closing was to take place in January 1996 with Hogan Land and Title Company, Inc. (Hogan) acting as escrow and closing agent. Hogan also sells title insurance for First American Title Insurance Company (First American).[1] The transaction did not close as planned.

In January 1998, BHA brought suit against Hogan, First American and Cliff Politte (Politte) in Greene County, Missouri (the first suit). Therein, BHA alleged that Hogan, through its agents and specifically Politte, falsely represented to BHA that it had received certified funds to close the January 1996 transaction, and that BHA relied on these representations to its detriment. Attorneys representing BHA in the first suit included William Stoner (Stoner) and C. Rabon Martin (Martin). Stoner was then a principal owner of BHA and remained so throughout these proceedings.

Between July 1998 and May 2004, BHA never conducted any written discovery, deposed any witnesses or filed a single substantive motion with the trial court. In February 2004, the court placed the action on its dismissal docket and in May 2004, the court dismissed the first suit without prejudice for failure to prosecute.

In April 2005, BHA again brought suit against Hogan, First American and Politte concerning the failed January 1996 real estate transaction (the present suit). BHA was again represented by its prior attorneys, Stoner and Martin. In June 2005, Politte died. Politte was never served in either lawsuit, served with written discovery or deposed.

In July 2005, Hogan filed preliminary routine motions in response to BHA's petition. Because BHA did not notice Hogan's motions for hearing in the months that followed, in mid-April 2006, Hogan noticed its own pending motions for hearing before the court. At the hearing, the judge disqualified himself on his own motion, but the parties reached agreements with respect to Hogan's motions. BHA agreed to amend its petition on or before May 15, 2006. Counsel for Hogan confirmed this agreement in an April 2006 letter to Martin and Stoner. During April, May and June, however, BHA failed to amend its petition. In July 2006, counsel for Hogan sent a second letter to Martin and Stoner, asking that BHA honor its prior commitment to amend its petition. In early August 2006, the court scheduled a conference to discuss the status of the present suit. BHA still had not amended its petition as promised. Counsel for Ho-

---

1. The extent of First American's involvement in the transaction is unclear. In First American's motion for a more definite statement, it claimed BHA failed to establish the basis or scope of an agency relationship between First American and Hogan and failed to allege anyone at First American knew about any wrongful act. Vicarious liability provided the sole alleged basis of BHA's claims against First American.

gan attended this conference, but no one attended on behalf of BHA.

In mid-August 2006, Hogan filed its motion to dismiss for failure to prosecute, noting that BHA had still failed to amend its petition as it agreed to do, that the underlying dispute had occurred more than ten years prior and that Hogan had been prejudiced by BHA's failure to prosecute because of the intervening death of undeposed party/witness Politte. In late August 2006, in response to Hogan's motion, BHA filed its first amended petition and served discovery on Hogan consisting of interrogatories, a request for production of documents and a request for admissions. This was the first written discovery initiated by BHA in either the first suit or the present suit.

On September 6, 2006, the trial court heard Hogan's motion to dismiss for failure to prosecute. Martin and Stoner both attended on behalf of BHA. Martin acknowledged to the court that he and his client had "let this case languish." Martin argued, however, that BHA had not had the stern "admonition" of impending dismissal that he thought was necessary under Missouri law and that BHA had recently "submitted a round of discovery." Hogan argued that BHA's recent set of written discovery appeared to be a "last ditch effort" to save the case. The court agreed, stating that BHA was "shoot[ing] off your own round of discovery under the guise of well now we want to move the case along." Ultimately, the court denied Hogan's motion to dismiss without prejudice, but noted that it was a "very close call." The court then issued BHA a warning "bigger than Dallas":

> And let everything I say be a warning to you, Mr. Stoner and Mr. Martin. All right. You talked about other cases where there is a warning. Well this is a warning bigger than Dallas. Okay....

> [I]n the future, whether it's next month or six months, or next year, if [Hogan's counsel] file this motion again, I'm not going to hear argument whether I can't or should. Right or wrong I'm going to consider, and I will consider, and I have considered the inactivity and the procedural history of the first case. I think it's very relevant.

> . . . .

> So what I'm telling you is, while I'm denying the motion today, it could and may well be a different result soon. Like I say, this is the warning. Okay. You didn't think you had a warning before.

> I'm also going to give the defendants an opportunity—not—regardless of the plaintiffs failure, but the defendants, if they choose, may come back and refile that motion solely if they believe discovery can bear out that they've been prejudiced by the inactivity. And can show me some—some—whether it be depositions or records requests or et cetera, and can show me whether it's by—by way of Mr. Pollite's passing, or whether it's by the passage of time, or whether it's in depositions and a lot of people saying I don't remember. Things like that. That may be developed through discovery.

> But, again, I'm going to be very in tune to—you know, I think we're at the point where straws will break the camel's back. And whether—you know, what—some inactivity or delays or failures to respond to discovery, or some lack of professional courtesy, and lack of vigilance overall. And other cases—you know, where it may be a—a slap on the wrist, or forgivable sin, it may be what breaks the camel's back in this case given its history. So I hope I'm clear on that.

Following the court's warnings, Martin stated the "warning bell" was clearly heard. The court then granted Hogan and First American 30 days to respond to BHA's first amended petition (by way of answer or motion), and stated that BHA's recently submitted written discovery did not need to be answered "until those motions have been disposed of."

In early October 2006, Hogan filed a motion to dismiss BHA's first amended petition on substantive grounds, with accompanying suggestions. On October 27, 2006, BHA filed a notice of hearing on Hogan's substantive motion to dismiss for November 7, 2006. At Hogan's request, BHA promised to have its brief in response to the motion to Hogan no later than November 1, 2006.

On November 2, 2006, counsel for Hogan sent a letter to Martin and Stoner, noting that Hogan had not received the promised brief in response to Hogan's motion to dismiss, and requesting it as soon as possible due to the upcoming hearing. The next day, Stoner called Hogan's counsel and suggested that the parties pass the scheduled motion hearing, for he thought the parties could reach an agreement with respect to Hogan's substantive motion to dismiss. Hogan agreed to attempt such an agreement and ask the court for a continuance of the November 7th hearing date.

On November 9, 2006, counsel for Hogan had an extended phone conversation with Martin regarding a possible stipulated disposition of Hogan's motion to dismiss. Hogan's counsel agreed to provide Martin with an outline of points to be included in a stipulation between the parties, if BHA would agree to promptly respond. The very next day, counsel for Hogan prepared a proposed stipulation and forwarded it to Martin. Counsel for Hogan asked for Martin's response by the following day, per his earlier telephonic promise to do so.

On November 14, 2006, Martin e-mailed a letter to Hogan's counsel apologizing for not getting back to Hogan sooner "as promised." Martin stated that he was "working on a detailed analysis of the first, second and third petitions, to show a side-by-side comparison" of same to prove his argument. Martin said that he hoped to get that to them by the next day, but that his secretary was out sick. Stoner was copied on Martin's letter. That same day, Hogan's counsel responded to Martin's e-mail telling him he understood about staff illnesses, and that "a few days won't make any difference."

Following Martin's November 14, 2006 correspondence, Hogan heard nothing from Martin, Stoner or BHA. BHA never provided the promised "side-by-side" analysis, the response to Hogan's proposed stipulation or any brief in response to Hogan's substantive motion to dismiss. It never re-noticed Hogan's motion for hearing.

On February 26, 2007, one hundred three days after BHA's promised response, and nearly five months after the filing of Hogan's substantive motion to dismiss (which was still unopposed), Hogan filed its renewed motion to dismiss for failure to prosecute. After reminding the court of the stern warning given to BHA at the September 2006 hearing, Hogan argued that BHA had continued to delay the case and had ignored Hogan's repeated attempts to communicate and advance the litigation for nearly six months following the trial court's admonitions.

In early March 2007, attorney Gene Graham (Graham) entered his appearance on behalf of BHA, and Stoner moved to withdraw. BHA also filed its suggestions in opposition to Hogan's renewed motion, along with affidavits from Martin and

Stoner. Martin's affidavit recited "many serious challenges" in his personal life—serious illness and domestic problems among them—and argued that "Branson Hills should not be penalized." Martin's affidavit also noted that despite these challenges, he had tried two criminal jury trials in January 2007, one of which was a murder trial, and had recently made "approximately 170 court appearances in around a dozen different cities." Stoner's affidavit alleged that he was unaware of Martin's problems, and that he did not know "there had been a hiatus in activity" in the case. Stoner's affidavit did not deny his receipt of Martin's November 14, 2006 letter, promising a swift reply to Hogan's proposed stipulation.

The trial court heard Hogan's renewed motion to dismiss for failure to prosecute on March 9, 2007. Graham argued the motion on behalf of BHA. With respect to the trial court's September 2006 "stay" of discovery, Graham noted that it was "very appropriately" entered. Graham also admitted that "you can dismiss a case because of its age." Graham announced, however, that he would be able to try this case within sixty days. Stoner also addressed the trial court. Among other statements, Stoner admitted that he remembered "clearly" the court's earlier admonishments. No cross-examination was permitted.

After the March 9th hearing, the parties submitted various materials to the trial court, including, at the court's request, copies of the correspondence between Hogan and BHA regarding Hogan's substantive motion to dismiss, but with discussions of settlement redacted. On March 21, 2007, the trial court sustained Hogan's motion to dismiss for failure to prosecute and entered judgment in favor of Hogan.

On April 20, 2007, BHA filed a motion to set aside judgment of dismissal. BHA's motion complained that the trial court had not received complete copies of the correspondence between Hogan and BHA regarding Hogan's proposed stipulation concerning its substantive motion to dismiss. BHA claimed that Hogan's court-ordered redactions of the correspondence were "misleading" and "one sided."

A new affidavit from Stoner also accompanied BHA's motion to set aside. The affidavit alleged that Stoner and Martin had "interviewed a witness," "spent several hours researching the law," taken relevant depositions in a different lawsuit in 1997 or 1998, "spent hours digging through old long term storage records" searching for material relevant to this case, and "made significant efforts" to locate relevant deposition transcripts from a prior lawsuit—all in an effort to prosecute this case. The affidavit does not name the witness interviewed, nor identify in any detail the law researched or the records and transcripts searched. No supporting documents were tendered, such as an affidavit from the witness allegedly interviewed. Hogan later filed a motion to strike Stoner's affidavit.

On June 25, 2007, the trial court heard arguments on both parties' motions. Responding to BHA's "unfair redaction" charges, the trial court received as Exhibit D complete and un-redacted copies of the e-mail correspondence between Hogan and BHA regarding BHA's substantive motion to dismiss. It overruled Hogan's motion to strike Stoner's affidavit. The court also granted Stoner leave to withdraw.

On July 2, 2007, the court denied BHA's motion to set aside. In its docket entry, the court explained:

Court reviews all submissions and letters from counsel. Defendant Hogan's Motion to Strike is overruled. Especially given the Court's orders and warnings of 9/6/06, it was incumbent upon plain-

tiffs to resolve defendant's Motion to Dismiss the Amended Petition, either by way of agreement or hearing. Although there were efforts by counsel, those efforts vanquished [sic] for over 100 days, during which time there was no contact by or on behalf of plaintiff, Mr. Martin or Mr. Stoner with defendants. Although the personal matters mentioned in Mr. Martins's [sic] affidavit are most unfortunate, the Court is nonetheless struck by Mr. Martin's apparent willingness and ableness to try two (2) jury trials in January 2007, one of which was a murder trial. The Court is also struck by the apparent lengthy period of no contact between Mr. Martin and Mr. Stoner, an atty and principal of this corporate plaintiff. Despite the recent entry and advocacy of Mr. Graham, plaintiff's Motion to Set Aside Judgment of Dismissal is denied, for these and the other reasons cited by defendants.

This appeal followed.

## II. Discussion and Decision

■ Rule 67.03 authorizes a defendant to move for dismissal of a civil action against him for failure on the part of the plaintiff to prosecute the action.[2] "In addition, it is well settled that courts have inherent authority, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence." *Shirrell v. Missouri Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976); *Peet v. Randolph*, 103 S.W.3d 872, 876 (Mo.App. 2003). Because the ruling is discretionary, it is presumed correct, and the appellant bears the burden of showing an abuse of discretion. *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804 (Mo. banc 1988); *Baker v. Felker*, 952 S.W.2d 743, 746 (Mo.App.1997). "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable men can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lehndorff*, 744 S.W.2d at 804; *Shirrell*, 535 S.W.2d at 448. A fair test is whether the plaintiff "had a reasonable opportunity to bring the matter to trial." *Duckett Creek Sewer Dist. v. Westerfield Development Corp.*, 930 S.W.2d 497, 499 (Mo.App.1996); *State ex rel. Mo. Hwy. & Transp. v. McCann*, 685 S.W.2d 880, 886 (Mo.App.1984). BHA has not met its burden of establishing an abuse of discretion in this case.

■ In BHA's sole point on appeal, it contends dismissal was inappropriate because "its actions in this case, particularly since the September 6, 2006 hearing, indicates a concerted effort on its part to bring this matter to trial." BHA specifically argues that during the six months prior to the court's dismissal, BHA had substantially moved its case toward trial by deposing a witness, interviewing a witness and submitting discovery requests. Our review of the procedural history reveals, however, that everything BHA did in this case since re-filing it in April 2005 occurred only *after* Hogan filed its motions to dismiss for failure to prosecute. *See Kralik v. Mortgage Syndicate, Inc.*, 673 S.W.2d 448, 449 (Mo.App.1984) (following several months of inactivity, plaintiff appeared only after defendants filed their motion to dismiss for failure to prosecute). In late August 2006, over sixteen months after re-filing, BHA finally filed its first amended petition and written discovery, but only after Hogan filed its first motion

---

**2.** Reference to this rule is to Missouri Court Rules (2007).

to dismiss. At the September 2006 hearing on that motion, the trial court was lenient in denying dismissal at that time. It was also at that hearing that the court issued its first warning "bigger that Dallas" to BHA to move forward with the case. Yet, except for correspondence in mid-November 2006, BHA did nothing until after Hogan filed its second motion to dismiss for failure to prosecute in February 2007. Although BHA's new counsel attempted to argue otherwise, the trial court could reasonably conclude that BHA took no action to diligently move its case forward in the nearly 2 years since its re-filing in April 2005, which was already over 8 years since the claim allegedly arose in January 1996. *See, e.g., Shirrell,* 535 S.W.2d at 449–50 (affirming dismissal after delay in bringing the case to trial for 4½

years); *Duckett Creek,* 930 S.W.2d at 500 (affirming dismissal after an 8–year delay; "the delay in this case was almost twice as long as the delay in the *Shirrell* case").[3] BHA had a reasonable opportunity to bring the matter to trial. *Duckett Creek,* 930 S.W.2d at 500.[4] On these facts, this Court finds the trial court's dismissal was not clearly against the logic of the circumstances before the court nor was it so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. "At the very least, it must be said that 'reasonable men could differ as to the propriety of the action taken by the trial court.'" *Shirrell,* 535 S.W.2d at 450. As our Supreme Court explained in *Shirrell:*

> Courts must be able to control and move their dockets. It is well known that the

**3.** We are mindful that the previous delay involved in the dismissal of the first suit does not, of itself, justify dismissal for failure to prosecute the present suit. *State ex rel. Nixon v. Summit Inv. Co., LLC,* 186 S.W.3d 428, 434 (Mo.App.2006); *State ex rel. State Highway Commission v. Graeler,* 495 S.W.2d 741, 743 (Mo.App.1973) ("[d]espite a long delay and despite what occurred in the past, we must determine the status of a dismissal upon motion of the defendant for failure to prosecute as of the time the motion to dismiss was made and not on occurrences which happened prior thereto"). However, the previous delay is a factor to be considered. *Summit,* 186 S.W.3d at 434; *Watkins Inv. Co. v. William B. Tanner Co.,* 684 S.W.2d 929, 936 (Mo.App. 1985). The trial court properly considered the previous delay in conjunction with ongoing delays since re-filing the suit and the court's stern warning to move the case forward. "[A] lengthy period of delay *may* be enough to warrant dismissal if the party has been warned that he must act with more diligence." *Watkins,* 684 S.W.2d at 937 (italics in original); *Summit,* 186 S.W.3d at 434. BHA repeatedly failed to act with more diligence and move the case forward.

**4.** BHA also argues that because of its lead counsel's health and marital problems between November 2006 and February 2007, the delay in prosecuting this case is "un-

derstandable and forgivable." In *Shirrell,* however, our Supreme Court affirmed the dismissal after the 4½-year delay, notwithstanding the fact that plaintiff's counsel was incapacitated by a heart attack some four months prior to the dismissal. *Shirrell,* 535 S.W.2d at 449–50. Like *Shirrell,* significant delays in this case already had taken place long before Martin's health and marital problems occurred. *See id.; Wright v. Price,* 871 S.W.2d 12, 14 (Mo.App.1993) (affirming dismissal because of "long periods of inactivity in prosecuting it and the case's age" and despite "attorney's numerous personal problems"). In addition, the extent to which Martin's personal problems affected his professional obligations was questionable. In an affidavit filed with BHA's suggestions in opposition to Hogan's renewed motion to dismiss, Martin indicated he had tried two criminal jury trials in January 2007 and had recently made "approximately 170 court appearances in around a dozen different cities." The court referenced Martin's willingness and ability in this regard as well as the apparent lengthy period of no contact between Martin and Stoner— an attorney and principal of BHA, who also had knowledge of the relevant time frame to respond.

volume of cases filed has become such that if courts do not dispose of cases with reasonable dispatch, the backlog will be such that many persons will not be able to have their cases heard within a reasonable time because of unnecessary and sometimes unreasonable and excessive delay in other cases. There are exceptional cases when delay is justified and when a court properly permits it, but there is nothing in this record which cried out for the court to have been more lenient than it was.

*Id.* Therefore, the trial court did not abuse its discretion. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.