

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| CASSANDRA MURPHY, | ) | No. ED112980 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Charles County |
| vs. | ) | Cause No. 2111-CC01088 |
| | ) | |
| INTENSIVA HOSPITAL OF GREATER | ) | |
| ST. LOUIS, INC., D/B/A SELECT | ) | |
| SPECIALTY HOSPITAL, | ) | Honorable Brittney R. Smith |
| | ) | |
| Respondent. | ) | Filed: August 19, 2025 |

### Introduction

Cassandra Murphy appeals the circuit court's judgment dismissing her case for failure to prosecute. She raises two points on appeal. In Point I, she argues the circuit court abused its discretion in dismissing her case because she did not delay moving her lawsuit toward trial. In Point II, she argues her due process rights were violated because the circuit court did not afford her a formal evidentiary hearing before the case was dismissed with prejudice.

This Court holds the circuit court abused its discretion in dismissing Murphy's case because she sufficiently moved the lawsuit toward trial. Point I is granted. Because Point I is dispositive, this Court does not address Point II. The circuit court's judgment is reversed, and the case is remanded with specific instructions to reinstate Murphy's case.

**Factual and Procedural History**

Murphy filed her petition on December 6, 2021, against Intensiva Hospital of Greater St. Louis for sex discrimination, sexual harassment, hostile work environment, and retaliation under the Missouri Human Rights Act ("MHRA"). She filed her first amended petition on January 12, 2022. Intensiva served its first interrogatories and first requests for production on March 29, 2022. Murphy filed her response to those interrogatories and requests for production on June 7, 2022. Intensiva moved to compel Murphy to respond to certain interrogatories and requests for production on March 31, 2023. The circuit court held a hearing and granted the motion to compel, in part, on May 12, 2023, and Murphy supplemented her discovery on June 12, 2023.

No further action occurred until February 5, 2024, when the circuit court clerk notified Murphy her case was put on the dismissal docket. The pro forma notice stated the case would be dismissed unless Murphy moved to reinstate the case to active status. Murphy moved to remove the case from the dismissal docket on February 9th, arguing the case was active because "discovery is ongoing." The circuit court sustained Murphy's motion and reinstated the case to active status on February 14th.

On March 18th, Intensiva's lead attorney, Eric Todd, called Murphy's counsel, Bridget Halquist, and engaged in preliminary settlement negotiations. The record is unclear on the exact language used in the telephone call.[1] Halquist reported she told Murphy about this negotiation, but did not immediately receive a response. After Todd did not hear back from Halquist, Todd's associate, Mallory Stumpf Zoia, emailed Halquist on May 28th, requesting dates to take Murphy's deposition. When Halquist did not respond, Zoia sent another email on June 3rd, again requesting dates to set Murphy's deposition. Halquist did not respond to this email either, so on June 4th,

---

[1] Additional facts regarding this settlement negotiation will be discussed in the analysis.

Intensiva noticed a deposition for June 27th. Halquist responded to this filing and said she, Halquist, was unavailable on that date, but would "get you available dates this week after I hear back from [Murphy]." Intensiva cancelled the deposition.

Zoia followed up on June 10th regarding dates for Murphy's deposition. Halquist responded the following day she was "still waiting to hear back from Murphy." One week later, on June 18th, Zoia again followed up on Murphy's deposition availability and Halquist said she still could not get a hold of Murphy. Zoia said if she "does not have potential deposition dates … by the end of the week, we will file a motion to compel [Murphy's] deposition." Halquist responded she would file a motion to quash the deposition because she was "still trying to get a hold of" Murphy and "would appreciate some patience." On July 17th, Intensiva moved to dismiss for failure to prosecute or to compel Murphy's deposition.

The circuit court set a hearing on the motions for August 23rd. At the hearing, the parties were represented by Halquist's associate, Sarah Tomlinson, and by Zoia. The circuit court sustained the motion to dismiss for failure to prosecute. On September 6th, Murphy moved to vacate the dismissal. The circuit court held a hearing on the motion to vacate on September 17th, at which Halquist and Zoia appeared. In support of Murphy's argument she did not delay, Halquist relayed several statements Todd had told her. The circuit court wanted to reset the hearing for a time when "Mr. Todd [can] appear because … if you're saying I had all these discussions with Mr. Todd … quite literally it is, by definition, hearsay and I want him here to be able to say it." The circuit court then said, "So I'm not ruling today. We're picking a date. Reach out to … Todd and we can coordinate … and figure out when we can put you guys not on the criminal docket."

Later that same day, Halquist appeared before the circuit court *ex parte* and requested the circuit court rule on the motion before September 22nd. The next day, September 18th, the circuit

court overruled Murphy's motion to vacate. Though it "intended to allow the hearing on [Murphy's] Motion to Vacate … to continue at a future time when … Todd could be present," the circuit court noted the attorneys left court "without picking a new date and time and [Halquist] reappeared later and requested this Court rule on the motion by 9/22/24." The circuit court entered an amended judgment dismissing the cause with prejudice because the statute of limitations had run, and the Savings Statute did not apply to Murphy's MHRA claims.[2] This appeal follows.

## Discussion

### *Point I: Failure to Prosecute Dismissal*
### *Party Positions*

Murphy argues the circuit court abused its discretion in dismissing her claims because there was no delay in the prosecution. Intensiva contends Murphy delayed prosecuting her case for 14 months, which justified the dismissal.

### *Analysis*

#### A. *This Court Prefers Resolution on the Merits and Doing Justice Over Expediting Dockets*

"[T]he [circuit] court has the inherent power to dismiss a case … for failure to prosecute." *Buxton v. Todd*, 598 S.W.3d 921, 924 n.1 (Mo. App. W.D. 2020). "The decision as to whether the action has been diligently prosecuted must be made on a case by case basis." *Kralik v. Mortg. Syndicate, Inc.*, 673 S.W.2d 448, 449 (Mo. App. E.D. 1984). "The [circuit] court's decision on this matter will not be disturbed on appeal absent an abuse of discretion." *Id*. "The court's discretion to dismiss a case for failure to prosecute 'is not a mental discretion, but a legal discretion, to be exercised in conformity with the spirit of the law, and in a manner to serve the ends of substantial justice.'" *Peet v. Randolph*, 103 S.W.3d 872, 877 (Mo. App. E.D. 2003) (quoting *Laurie v. Ezard*, 595 S.W.2d 336, 337 (Mo. App. S.D. 1980)).

---

[2] *See Hutcheson v. Elec. Data Access Techs., Inc.*, 327 S.W.3d 622, 625 (Mo. App. E.D. 2010).

While courts must work to expedite their dockets, "it is of greater importance that the court's work 'should be done with care and discernment and that [the court] should be ever diligent and zealous in [its] unremitting efforts to attain the ends of justice.'" *Id*. "As a matter of policy, Missouri law favors the disposition of cases upon the merits, when possible" because "the purpose of all courts is to do justice, and justice is best served when all litigants have a chance to be heard." *Id*. at 877–78.

### *B. Murphy's Case Was Not Substantially Delayed*

A failure to prosecute dismissal requires a substantial delay without a valid excuse. *See Wheeler v. Eftink*, 507 S.W.3d 598, 601 (Mo. App. E.D. 2016) ("Mere delay in prosecution is insufficient …. There must be some evidence that the delay was unnecessary …."); *Horobec v. Mueller*, 628 S.W.2d 942, 944 (Mo. App. E.D. 1982) ("Most cases in which the action had been dismissed involved a substantial period in which the plaintiff took no action to bring the matter to trial"); *State ex rel. Mo. Highway & Transp. Comm'n v. Moulder*, 726 S.W.2d 812, 814 (Mo. App. S.D. 1987) (Delay alone does not mandate sustaining a motion to dismiss for failure to prosecute but "delay in prosecution, *without a valid excuse*, requires that motion to dismiss be sustained.") (emphasis in original).

This Court has calculated substantial delay in one of two ways: (1) whether the party had a reasonable opportunity to bring the case to trial or (2) periods of inactivity. *See Duckett Creek Sewer Dist. v. Westerfield Dev. Corp.*, 930 S.W.2d 497, 500 (Mo. App. E.D. 1996) (the plaintiff had a reasonable opportunity to bring its case to trial because the case languished in the circuit court for eight years); *Branson Hills Assocs., L.P. v. First Am. Title Ins. Co.*, 258 S.W.3d 568, 574 (Mo. App. S.D. 2008) (reasonable opportunity to bring the case to trial eight years after claim arose); *Kralik*, 673 S.W.2d at 449 (15-month period of inactivity justified dismissal); *Cagle v.*

*Klinkerfuss*, 504 S.W.2d 155, 156 (Mo. App. 1973) (dismissal appropriate after 13-month period of inactivity). Because Murphy did not delay her case in either of these two ways, the circuit court abused its discretion in dismissing her case.

### i. Murphy Did Not Have a Reasonable Opportunity to Bring Her Case to Trial

First, "[a] fair test of whether a [circuit] court abused its discretion in dismissing a case for failure to prosecute with due diligence is whether the plaintiff had a reasonable opportunity to resolve the matter at trial." *Wheeler*, 507 S.W.3d at 601. A party has a reasonable opportunity to bring a case to trial when there is a significant delay from filing the lawsuit or the claim to the eventual dismissal. *See e.g., id.* at 601–02 (dismissed nine years after original suit was filed); *Duckett Creek*, 930 S.W.2d at 500 (dismissed eight years after suit was filed); *Shirrell v. Mo. Edison Co.*, 535 S.W.2d 446, 449–50 (Mo. banc 1976) (dismissed four-and-a-half years after suit was filed); *State ex rel. Mo. Highway & Transp. Comm'n v. McCann*, 685 S.W.2d 880, 888 (Mo. App. W.D. 1984) (multiple cases dismissed six to eight years after suit was filed); *Branson Hills*, 258 S.W.3d at 574 (reasonable opportunity to bring case to trial eight years after claim arose).

The shortest delay this Court has authorized to dismiss on the "reasonable opportunity" grounds, according to the parties and this Court's research, is three-and-a-half years. *Townsend v. Union Pac. R. Co.*, 968 S.W.2d 767, 768 (Mo. App. E.D. 1998) (suit filed in August 1993 and dismissed in March 1997). Current case law thus indicates significant time means longer than three-and-a-half years.[3] Here, Murphy's case was pending for roughly two-and-a-half years. Based upon this Court's precedent, a delay of two-and-a-half years is not significant enough to hold a

---

[3] Because case law may continue to evolve in this area and circumstances may vary depending on a case's complexity, this opinion should not be read as declaring a bright line rule prohibiting a circuit court from dismissing a case until more than three-and-a-half years have elapsed between filing and seeking dismissal.

party has had a reasonable opportunity to bring a case to trial. Accordingly, Murphy did not delay litigating her case on these grounds.

### ii. Murphy Did Not Have an Extended Period of Inactivity

Second, extended periods of inactivity can likewise constitute a substantial delay justifying dismissal for failure to prosecute. *See e.g., Kralik*, 673 S.W.2d at 449 (15-month period of inactivity). An extended period of inactivity occurs when a party completes either *no* work or a *de minimis* amount for a significant time. *See e.g., id.*; *Cagle*, 504 S.W.2d at 156; *Cain v. Buehner & Buehner*, 839 S.W.2d 695, 698 (Mo. App. S.D. 1992). Strictly applying this test would result in many plaintiffs losing their cause of action despite their attorneys completing at least *some* work. *Cf. Laurie*, 595 S.W.2d at 338 ("to dismiss a case for prior inactivity while it was being pursued could cause many cases to be dismissed which should not be."). A party completes more than *de minimis* work when they engage in settlement negotiations. *See, e.g., State ex rel. Nixon v. Summit Inv. Co., LLC*, 186 S.W.3d 428, 435 (Mo. App. S.D. 2006) (ongoing negotiations enough to reinstate case).

*Kralik* and *Cain* are instructive in defining *de minimis* work. In *Kralik*, after the defendant's summary judgment motion was overruled, the plaintiff "took no action to ready this case for trial" in the next 15 months, except to file two motions to withdraw. *Kralik*, 673 S.W.2d at 449. Despite filing two motions, this Court held there was a period of inactivity justifying dismissal. *Id*. Likewise, in *Cain*, after 18 months of total inactivity, the circuit court notified the parties it "intend[ed] to dismiss the cause for failure to prosecute … unless a written motion is filed setting forth facts justifying it remaining active." *Cain*, 839 S.W.2d at 696. In response, the plaintiff filed a motion for jury trial which requested a trial date but did not—in violation of the circuit court's request—set forth facts justifying the case remaining active. *Id*. *Cain* held this motion was so

7

legally deficient as to be no filing at all, justifying the circuit court dismissing the case a few days after this motion was filed. *Id*. at 698. Accordingly, *de minimis* work—like a motion to withdraw or a legally deficient motion for jury trial—does not move the case toward trial.

Here, the only possible period of inactivity was from June 13, 2023 (the day after Murphy supplemented her discovery) to August 23, 2024 (when Murphy's case was dismissed), a period of 14 months.[4] During this period, Halquist was inattentive in moving Murphy's case forward. Nonetheless, she completed more than *de minimis* work on the case: she took three actions in this 14-month period which moved Murphy's case toward trial, unlike in *Cagle*, *Kralik*, or *Cain.* First, Halquist moved to remove the case from the dismissal docket on February 9, 2024. While this motion merely restores a case to active status, it keeps the case moving on the circuit court's docket.

Second, Halquist and Todd engaged in preliminary settlement negotiations on March 18, 2024. As mentioned, the record is unclear on the exact language used in the telephone call, but both parties agree Todd referred to a companion case he and Halquist had recently settled. Before the circuit court, Zoia stated Todd had asked Halquist "if [Murphy] would be interested in resolving this for something similar to the other case." At oral argument, Todd reported he asked Halquist if she thought Murphy "would be interested in discussing settlement along the lines of the case we just settled." Whatever language was used, this was not a formal settlement negotiation because Todd lacked the authority to extend an offer to Murphy. However, Todd conceded at oral

---

[4] The current precedent is unclear on whether the inactivity calculation should end with the filing of the motion to dismiss or with the actual dismissal. *See Branson*, 258 S.W.3d at 573–74 (seeming to disregard work completed after the defendant moved to dismiss the case). Here, the period of inactivity is either 13 months (from the day after supplementing discovery to the day motion to dismiss was filed) or 14 months (from the day after supplementing discovery to dismissal of the case). Because our holding would be the same no matter which date we chose, this Court can resolve the instant case without answering that question. *See L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co., L.P.*, 75 S.W.3d 247, 258 (Mo. banc 2002) (declining to decide which test applies because plaintiff's case satisfied all three).

8

argument he considered this discussion to be an "opening entrée" in settlement negotiations and expected a response from Halquist. Additionally, Halquist reported this preliminary settlement negotiation to Murphy, who eventually rejected it.[5] It is hard to say no work or only *de mimimis* amounts were completed on the case when Halquist was engaging in preliminary settlement negotiations and relaying them to her client. Intensiva cannot, on the one hand, argue the discussions were not a negotiation but, on the other, cite Halquist's failure to respond to a supposed non-offer as indicative of a period of inactivity. *See Summit Investment*, 186 S.W.3d at 434 (ongoing settlement negotiations enough to reinstate case). This Court holds the discussions were part of a settlement negotiation because Todd expected a response.

Third, the parties had a dispute about when Murphy should be deposed. While Halquist and Murphy caused the delay in scheduling Murphy's deposition, Halquist exchanged multiple emails with Murphy and Zoia attempting to schedule a deposition. This consistent contact between Halquist and Zoia exhibits work on Murphy's behalf, not inactivity.

This Court need not answer whether these actions individually would constitute sufficient work because the combination of such actions does. Halquist kept Murphy's case active, engaged in preliminary settlement negotiations, relayed those negotiations to Murphy, and attempted to arrange a mutually-agreeable date for Murphy's deposition. These actions more resemble the negotiations in *Summit Investment* than the motion to withdraw in *Kralik* or the legally deficient motion in *Cain* because they moved the case toward trial. Especially when considering this Court's preference to resolve cases on their merits and our Court's insistence on doing justice over expediting dockets, these actions moved Murphy's case toward trial and were enough to prevent

---

[5] The record does not disclose exactly when Murphy rejected the offer.

her from losing her cause of action. *See Peet*, 103 S.W.3d at 877; *Summit Investment*, 186 S.W.3d at 435.

According to the parties and this Court's research, *Cagle* is the only case dismissed with an earlier period of inactivity than Murphy's.[6] *Cagle*, 504 S.W.2d at 156 (13-month period of inactivity). But in *Cagle*, the case was dismissed because the plaintiff completed *no* work for 13 months and did not show up to the motion to dismiss hearing. *Id.* at 156–57. Here, Halquist completed *some* work during the 14-month period and appeared at the motion to dismiss hearing. As such, *Cagle* is distinguishable, and the instant case would become the earliest dismissal of a case in which a party showed up to defend itself at the motion to dismiss hearing. The facts of this case are not egregious enough to warrant such a result.

Finally, Intensiva argues "[a] lengthy period of delay may be enough to warrant dismissal if the party has been warned that he must act with more diligence," citing *Branson Hills*, 258 S.W.3d at 574 n.3. Intensiva contends the dismissal notice constituted a warning to Murphy. It is unclear a pro forma dismissal notice is the same as a personalized warning when compared to some previous cases. *See id.* (verbal warning during motion to dismiss hearing); *Watkins Inv. Co. v. William B. Tanner Co., Inc.*, 684 S.W.2d 929, 937 (Mo. App. S.D. 1985) (warning "counsel in the strongest terms" in a personalized letter). However, this Court need not decide this question because, as discussed, there was no lengthy period of delay in this case: Halquist sufficiently moved the case to avoid any extended periods of inactivity. Warning or no warning, Murphy has not delayed her case enough to warrant a failure to prosecute to dismissal.[7]

---

[6] At oral argument, Intensiva argued *Townsend* authorized a dismissal after a three-month period of inactivity. In *Townsend*, however, the circuit court dismissed the case because a *pro se* litigant failed to obtain representation within three months after his original counsel withdrew. *Townsend*, 968 S.W.2d at 770. In contrast, this case (as well as *Cagle*, *Kralik*, and *Cain*) involve different facts: attorneys failing to take sufficient action to move their cases forward.
[7] This Court's ruling does not condone further inattention; we merely hold Halquist has taken enough action on Murphy's behalf to avoid dismissal at this time. We do not decide whether this holding would be the same if the case

*iii. The Circuit Court Abused its Discretion*

Murphy's case was not substantially delayed in either of the two ways this Court has calculated delay. First, she has not yet had a reasonable opportunity to bring her case to trial because it has only been pending for two-and-a-half years. Second, although Halquist was certainly inattentive in managing Murphy's case, she completed more than *de minimis* work during the relevant 14-month period, unlike the motion to withdraw in *Kralik* or the legally deficient motion in *Cain*, because she (1) moved to remove the case from the dismissal docket, (2) received and relayed preliminary settlement negotiations, and (3) engaged in a deposition scheduling dispute with Intensiva. While this is far from model case management, given this Court's preference for resolving cases on their merits, the relative swiftness of the dismissal here, and our insistence on doing justice over expediting dockets, these three actions constituted sufficient work to avoid dismissing Murphy's cause of action for failure to prosecute. The circuit court abused its discretion when it decided otherwise.

Point I is granted. Because Point I is dispositive, this Court need not address Point II. *See Sullivan v. City of Univ. City*, 677 S.W.3d 844, 855 (Mo. App. E.D. 2023).

**Conclusion**

The circuit court's judgment is reversed, and the case is remanded with specific instructions to reinstate Murphy's case.

_____
Philip M. Hess, Judge

Michael S. Wright, P.J. and
Virginia W. Lay, J. concur.

---

continues on its glacial pace. *Shirrell*, 535 S.W.2d at 450 (affirming a circuit court which refused to dismiss for failure to prosecute two-and-a-half years after filing, but eventually did dismiss four-and-a-half years after filing).